Rosemarie C. WOOTERS, Glenn Wooters, Patricia Johnson, Donald Johnson, Cynthia Loveless and Harry Loveless, on behalf of themselves and all other residents of Brookmont Farms, a residential development in New Castle County, Delaware, Plaintiffs,

v.

Mary D. JORNLIN, Individually and as County Executive of New Castle County, Henry J. Folsom, Jr., Individually and as former acting County Executive of New Castle County, Melvin Slawik, Individually and as former County Executive of New Castle County, Albert W. Madora, Individually and as Director of the New Castle County Department of Public Works, Stephen Kowalchuk, Jr., Individually and as Director of Development and Licensing of the New Castle County Department of Public Works, Warren O'Sullivan, Individually and as former acting Director of Development and Licensing of the New Castle County Department of Public Works, Edward F. Peterson, Individually and as former Director of Development and Licensing of the New Castle County Department of Public Works, Thomas Fede, Individually and as Chief Building Inspector of the New Castle County Department of Public Works, James Cunane, John Dugan, Robert Roberto, and Clifford Turner, Individually and as building inspectors of the New Castle County Department of Public Works, New Castle County, a political subdivision of the State of Delaware, David Biloon, Individually and as Director of Lines and Grades of the New Castle County Department of Public Works, Maryland National Bank, a National Bank chartered in the State of Maryland, and Mr. Real Estate Co., a Delaware Corporation, Defendants.

Civ. A. No. 78–404.

United States District Court, D. Delaware.

Sept. 20, 1979.

Elwyn Evans, Jr., Wilmington, Del., and Walter L. Pepperman II, and Donald A. Jenkins of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., of counsel, for plaintiffs.

Gary W. Aber and Howard M. Berg of Berg, Aber & Heckler, P.A., Wilmington, Del., for defendant, New Castle County and the individual defendants.

Allen M. Terrell, Jr., of Richards, Layton & Finger, Wilmington, Del., and Charles T. Albert, Paul V. Niemeyer and Stewart K. Diana, Baltimore, Md., for defendant, Maryland National Bank.

Samuel J. Frabizzio, Wilmington, Del., for defendant, Mr. Real Estate Co.

## OPINION

LATCHUM, Chief Judge.

Rosemarie C. Wooters and five other homeowners ("Plaintiffs") of Brookmont Farms, a residential development in New Castle County, Delaware, commenced this action on their own behalf and all other homeowners of the development,[1] seeking damages and injunctive relief under 42 U.S.C. § 1983. The defendants are New Castle County, five building inspectors, and various other county officials (the "county

---

1. This action has not yet been certified as a class action.

defendants"), Mr. Real Estate Co., the developer and builder of the homes in Brookmont Farms, and Maryland National Bank ("Bank"), a National Bank chartered in the State of Maryland, which financed both the building of Brookmont Farms, through a construction mortgage loan, and the purchasing of many individual homes, through permanent mortgage financing. Plaintiffs claim that jurisdiction exists by virtue of 28 U.S.C. § 1343(3) and (4) and "principles of pendent jurisdiction." The county defendants have moved to dismiss the complaint, pursuant to Rules 12(b)(1) and (6), F.R. Civ.P., contending that the Court lacks subject matter jurisdiction and that the complaint fails to state a claim upon which relief can be granted. The Bank also moved to dismiss for lack of subject matter jurisdiction. Rule 12(b)(1), F.R.Civ.P. Because of the dispositions of these two motions, the Court finds it unnecessary to rule upon the other ground asserted by the Bank in support of its motion to dismiss.[2]

### I.  THE FACTS

The following facts, here summarized, are taken from the plaintiffs' complaint and for the purposes of the present motions are accepted as true.[3] Plaintiffs are resident homeowners of Brookmont Farms, a housing development consisting of single-family dwellings which had been planned, constructed, and sold as moderate and low income housing. All of the plaintiffs in deciding to purchase their homes relied upon "assurances" given to them by the county defendants and the Bank that the homes

had been constructed according to certain specifications. For the county defendants, the "assurances" took the form of certificates of occupancy ("CO's"), which had been issued on the homes by the county building inspectors. Plaintiffs contend that the requirements of the New Castle County Code[4] are such that the mere issuance of a CO by the county, as is required by the Code before title may be passed or a new building occupied,[5] constitutes a personal assurance to the buyer that the new building conforms in all respects to the provisions of the Code.

The alleged assurances from the Bank took the form of loan commitment letters given to the plaintiffs wherein the Bank represented that the plans and specifications for the model home had been approved by the Bank, that the homes financed by the Bank's mortgage loans would conform to the model except for extra items purchased by each individual buyer and that mortgage funds would not be disbursed until construction had been completed to the satisfaction of the Bank.

Only after the plaintiffs moved into their homes did they discover that the buildings failed, in numerous respects, to conform to the Building Code, to other county ordinances and to the plans and specifications of the model home. Plaintiffs contend that had the Bank performed in accordance with its loan commitment letters, plaintiffs would have been made aware of the inherently undetectible construction defects and, similarly, had the county made routine and

---

2. The Bank also moved to dismiss the complaint, pursuant to Rule 12(b)(3), for improper venue. Mr. Real Estate Co. made no answer other than a statement in which it agreed to the entry of a default judgment. Plaintiffs have made no motion for the entry of such a judgment and no judgment has been entered. The plaintiffs' failure to make such a motion is not surprising since the complaint alleges that Mr. Real Estate Co. lacks assets with which it could satisfy any judgment.

3. In considering defendants' motions to dismiss, the Court must be guided by the principle that the allegations of the plaintiffs' complaint must be accepted as true. *Hall v. Pennsylvania State Police*, 570 F.2d 86, 89 n. 1 (C.A.3, 1978). Moreover, for purposes of a 12(b) motion,

those pleadings must be considered in the light most favorable to the non-moving party in this case, the plaintiffs. *Oxford First Corp. v. PNC Liquidating Corp.*, 372 F.Supp. 191, 192–93 (E.D.Pa.1974).

4. Section 5–1 of the New Castle County Code (1975) specifies that the BOCA Basic Building Code, Sixth Edition (1975), with the additions and amendments contained in Sec. 5–2 of the New Castle County Code, shall be the Building Code for New Castle County. (Hereinafter cited as Building Code §). The relevant portions of that Code will be cited, *infra*.

5. Building Code § 120.1 (1975).

thorough inspections and refused to issue CO's without full code compliance, the builder would have been unable to palm off these defective dwellings to them. Thus, the county officers either negligently conducted the Code inspections or made none at all in accordance with the custom and practice known to all the county defendants.

Consequently, as a result of their detrimental reliance upon the Bank's representations and the county's negligent inspections, plaintiffs (1) were induced to pay much more for the buildings than their worth and (2) were caused to incur significant expenses in unsuccessful attempts to correct the defects and in meeting extraordinary operating expenses.

Basing jurisdiction on 28 U.S.C. § 1343(3) and (4), plaintiffs allege that the actions of the county defendants constitute a violation of plaintiffs' rights under the Fourteenth Amendment and 42 U.S.C. § 1983 in that "those actions have deprived the plaintiffs of their property rights without due process of law."

Finally, plaintiffs contend that the Bank's activities constituted a tort, that Mr. Real Estate Co.'s activities amounted to a breach of contract, and because these latter claims arise out of a common nucleus of operative facts, jurisdiction exists over the Bank and Mr. Real Estate Co. under "principles of pendent jurisdiction."

## II. *THE COUNTY DEFENDANTS' MOTION TO DISMISS*

As previously noted, plaintiffs base their action against the county defendants on 42 U.S.C. § 1983 which reads:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities

secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

In order for a claim to exist under that statute, the plaintiffs must allege a deprivation of a constitutional right. Here the only right allegedly violated, and the only one that conceivably could be involved, is the Fourteenth Amendment right not to be deprived of property without due process of law.[6]

Although plaintiffs' complaint does not articulate with precision the property interests on which they rely, the Court has been able to identify three possible Fourteenth Amendment claims from their arguments and will proceed as if the plaintiffs had, indeed, been precise in defining their claims. First, plaintiffs argue that both Delaware State law and the New Castle County Code create a property interest in proper building inspections and that the county defendants' failure to conduct such inspections constitutes a deprivation of their property. Second, plaintiffs appear to contend that by inducing the plaintiffs to rely upon the county defendants' negligent inspections, the county defendants committed a tort and that the commission of that tort deprived them of property without due process. Third, they maintain that since the actions of the county defendants at least made it possible for Mr. Real Estate Co. to deprive the plaintiffs of property, then it can be said that the county defendants *caused* the plaintiffs to be deprived of property without due process. These three claims will be discussed *seriatim*.

### 1. Plaintiffs Have No Property Right To Building Inspections.

With respect to plaintiffs' first contention that they have a property interest in proper building inspections and the county defendants' failure to conduct such inspections de-

---

**6.** No liberty interest is alleged and the Court can conceive of none that could possibly be involved based on the facts alleged. The Court also notes that plaintiff's claim of a deprivation of their Fourteenth Amendment rights is not "wholly insubstantial and frivolous" and hence is sufficient to withstand the county defendants' 12(b)(1) motion to dismiss for want of subject matter jurisdiction. *Bell v. Hood*, 327 U.S. 678, 683, 66 S.Ct. 773, 90 L.Ed. 939 (1945).

prived them of their property, the Court finds itself presented with the unusual claim that certain state and county laws have created a property interest in the provision of a government service. Because the claim for a general governmental service is somewhat different than the usual claim for specific welfare assistance, *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), or for the retention of personal employment, *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), it becomes necessary once again to consider the attributes of the notion of property protected by the Fourteenth Amendment.

■ Certain attributes of the notion are well established. First, one must show some "legitimate claim of entitlement" and the claim of entitlement must also be grounded in and defined by some independent source of authority, such as state law. *Goldberg v. Kelly, supra; Board of Regents v. Roth, supra; Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1, 9, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978).

■ Because of the novel nature of the claim in the present case, it is necessary to flesh out the notion of "entitlement" as that term would apply to the provision of a general government service. It is often said that for any right to exist, there must be some corresponding duty. Hence, if one wishes to claim a right to a general governmental service, he must show that the provider of the service has a duty to provide that service. If the furnishing of the service is left to the discretion of the provider then there can be no entitlement. But the demonstration of the existence of a duty alone is not enough to establish individual entitlement. The party claiming the right must further show that the duty is owed to him as an individual rather than to the public at large. Of course, there could be some service which is owed to each and

every individual in a political unit and hence could be considered a property interest. Nevertheless, in order to become property the service must be owed to discrete individuals or individual entities. The Court is convinced that these principles, although unarticulated, have guided courts in the past. For example, in *Goss v. Lopez*, 419 U.S. 565, 573, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), plaintiffs were found to have a claim of entitlement to the provision of free education, a service, where Ohio law expressly directed local authorities "to provide a free education to all *residents* between five and 21 years of age." (Emphasis added). There, the duty imposed by state law ran directly to the plaintiffs as individual residents. On the other hand, it has been held that laws providing *the general public* with police or fire protection do not grant *individuals* a property right in that protection. *Shortino v. Wheeler*, 531 F.2d 938, 939 (C.A.8, 1976); *Reedy v. Mullins*, 456 F.Supp. 955, 958 (W.D.Va.1978); *Reiff v. City of Philadelphia*, 471 F.Supp. 1262 (E.D. Pa.1979). All of these cases involved claims of entitlement to the provision of governmental services. Moreover, in all cases the defendants had a duty to provide those services. They reached opposite results only because in *Goss* the duty was owed to each resident in a certain age class while in *Reiff, Shortino* and *Reedy*, the duty was owed to the undifferentiated *general public.* Thus, the Court concludes that in order to establish the existence of a property interest in housing inspections, the plaintiffs must point to (1) an independent source of authority (2) that establishes an absolute duty (3) that is owed to them as individuals rather than as members of the undifferentiated public.

(a) *Delaware State law creates no right to building inspections.*

■ Plaintiffs argue that 9 *Del.C.* § 1361 [7] (1974) establishes a claim of entitle-

---

7. The relevant portions of § 1361 read:

§ 1361. Functions.

The Department of Development and Licensing, headed by a Director of Development and

Licensing, shall perform the following functions:

(1) The Department, except as otherwise specifically provided in this title, shall adminis-

ment under state law to building inspections which are provided for by the County Code.[8] The Court disagrees. According to this Court's interpretation of 9 *Del.C.* § 1361 [9] (1974), that statute can create no property rights because it creates no mandatory duties. Rather, when read as a whole, the statute is a general grant of power or authority, defining the jurisdiction of the Department of Development and Licensing for New Castle County. Plaintiffs base their argument that 9 *Del.C.* § 1361 (1974) places mandatory duties on the county defendants upon the use of the word "shall" which appears throughout that provision. Although principles of statutory construction would generally interpret the word "shall" as creating a mandatory duty, in some instances it must be read in a non-mandatory sense. When affirmative words such as "shall" are employed and relate to the manner in which power or

ter and enforce all statutes, ordinances, and regulations for the protection of persons and property from hazards, in the use, occupancy, condition, erection, alteration, maintenance, repair, sanitation (including the maintenance and condition of plumbing and drainage facilities and the maintenance of sanitary conditions in housing accommodations), removal and demolition of buildings and structures or any parts thereof, and the grounds appurtenant thereto, in the operation of equipment therein, and of outdoor signs. The Department shall enforce compliance with the Zoning Code and regulations thereunder, subject to determinations made by the Board of Adjustment on appeals taken to it.

(2) The Department shall (i) issue all forms for applications and receive all applications for any license; (ii) determine whether the applicant is properly entitled to the license which he seeks; (iii) if the application is granted and the proper fee has been paid to the Department of Finance, issue the license to the applicant, either for itself or as agent for the officer, department, or board under whose jurisdiction the subject matter thereof falls; (iv) if the application is refused, notify the applicant in writing of the refusal and the reasons therefor. The requirements and standards to be met by applicants for licenses shall include those established by law. . . .

(3) The Department shall make all inspections except as otherwise specifically provided in this title.

(4) The Department shall determine, as the result of its inspection, whether any person or the owner of any property is violating the conditions of any license, or whether or not any property owner is violating any statute, ordinance or regulation which it is the duty of the Department to enforce. If the Department shall find a violation to exist, it shall forthwith make such order or take such other lawful action as may be necessary to correct the dangerous or unlawful condition, and if necessary it shall invoke the assistance of the County Attorney or the Department of Police, or both.

(5) The Department, whenever it finds that a holder of any license is violating the conditions thereof, and whenever the officer, department, or board as whose agent the Department grant-

ed the license directs the Department to do so, shall revoke, suspend or cancel the license. Any revocation, suspension or cancellation shall be in writing and shall state in detail the reasons therefor.

8. In contending that § 1361 creates a duty to perform the inspections required by the County Code, the plaintiffs argue as follows: The statute requires that "[t]he Department shall make all inspections," 9 *Del.C.* § 1361(3) and that "[t]he Department shall . . . determine whether the applicant is properly entitled to the license which he seeks", 9 *Del.C.* § 1361(2)(ii). The statute also provides that "The requirements and standards to be met by applicants for licenses shall include those established by law." 9 *Del.C.* § 1361(2). These provisions are said to incorporate any relevant county and municipal provisions. The New Castle County Building Code includes provisions which: (1) require that inspections of buildings be made during construction, § 111.1, and (2) require that before a CO can be issued a final inspection must be made and any Code violations or violations of the approved plans be noted, § 111.5. 9 *Del.C.* § 1361 would incorporate these provisions, as well as other provisions of the Building Code specifying what the building standards should be, since they are laws which govern the "requirements and standards" for licenses and require inspections.

Plaintiffs cite other portions of the New Castle County Code which, on their face, create no duty for the county. Some cited sections are directed at builders and owners and seek to ensure that they comply with the code. Sections 113.1 and 120.1 of the Building Code and New Castle County Code Section 6–18 fall into this category. Another provision relied upon by plaintiffs is clearly couched in a non-mandatory language, using the word "will". That section, New Castle County Code Sec. 6–18, appears to be a grant of jurisdiction. Finally, Building Code § 120.6 merely specifies the contents of a certificate of occupancy. The contents must include a certification that the building complies with the code requirements.

9. Apparently, no state court has had occasion to construe this provision.

jurisdiction vested in a public officer or body is to be exercised and not to the limits of the power or jurisdiction itself, they may, and often have been, construed as directory rather than mandatory. This is so because in cases involving prospective action by government officials, the word "shall" may be given a merely directory meaning, if the law's purpose is the protection or organization of the government by guidance of its officials rather than the granting of rights to a private person. *Triangle Candy Co. v. United States*, 144 F.2d 195, 198 (C.A.9, 1944); *International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America v. Shapiro*, 138 Conn. 57, 82 A.2d 345 (1951). Viewing the entire State Act in context, it appears to have used the word "shall" to mean "will" in the directory sense. This conclusion is supported by the fact that when the General Assembly intended to create a mandatory duty in the same Legislative Act, as it does in 9 *Del.C.* § 1165(a) Subchapter IV (1974), it specified "It shall be the mandatory duty . . .." Indeed, an examination of the original Legislative Act [10] (55 Del.Laws Part I, Chapter 85 (1965)) renders further support for the conclusion that the statute was a grant of powers. The section which became 9 *Del.C.* § 1361 is entitled "Functions" and the subchapter in which it is included appears among other subchapters defining the functions of other county departments. Undoubtedly, the word "shall" was used in these subchapters for the sole purpose of mandating the apportionment of various and discrete governmental functions among the several different county departments.

This Court would certainly hesitate to find that the Delaware General Assembly intended to make the strict enforcement of the county building code mandatory in every respect. Housing and building codes are often laxly and haphazardly enforced.

See, Note: *Enforcement of Municipal Housing Codes*, 78 Harv.L.Rev. 801–02, 804 (1965); Ackerman, Bruce A., *Regulating Slum Housing Markets on Behalf of the Poor: Of Housing Codes, Housing Subsidies and Income Redistribution Policy*, 80 Yale L.J. 1093 (1971). Any requirement of strict enforcement could have many undesirable side-effects, such as necessitating larger staffs in the Department of Licensing, thereby diverting public tax funds from more pressing needs and could substantially increase construction costs, thus making it more difficult, if not impossible, to provide for low and middle income housing.

For all of the foregoing reasons the Court declines to find that 9 *Del.C.* § 1361 (1974) creates mandatory duties without some clear statement from the Delaware General Assembly that it intended to create such duties. Because the county defendants have no absolute duty to perform housing inspections under state enacted law, plaintiffs have no state law entitlement to such inspections.

(b) *New Castle County Code creates no right to building inspections.*

◼ Plaintiffs' second contention is that even if Delaware law creates no property right to building inspections, New Castle County law,[11] standing alone, creates property interests in such inspections.

Even if the Court assumes, *arguendo*, that the County Code creates a duty to inspect, and that the county officers were guilty of nonfeasance or misfeasance for their failure to inspect properly, the Court nevertheless is led to the conclusion that the duties created by the Code, like the duty to provide police or fire protection, are owed to the public in general and not to any given individual. *Shortino v. Wheeler*, 531 F.2d 938, 939 (C.A.8, 1976); *Reedy v. Mul-*

---

**10.** "An Act Providing For The Reorganization Of The Government of New Castle County And Amending and Repealing Existing Laws Pertaining Thereto." 55 Del.Laws, Part I, Chapter 85 (1965). 9 *Del.C.* § 1361 appears as subchapter IV § 1361 and is encoded as 9 *Del.C.* Part II.

**11.** The County Code provisions upon which plaintiffs rely are cited in footnote 8, *supra.* There they argued that the state law incorporated the County Code and granted the rights to inspections required by the County Code. Here they argue that county law alone grants the right.

*lins,* 456 F.Supp. 955, 958 (W.D.Va.1978); *Reiff v. City of Philadelphia,* 471 F.Supp. 1262 (E.D.Pa.1979). The Court reaches this conclusion by considering (1) the stated purposes of the Building Code, (2) other Code provisions, (3) the nature of the Code and (4) the types of interest that are actually protected by enforcement of the Code.[12]

■ Section 100.4 of the Building Code for New Castle County (1975) states that the "express intent" of the Code is:

> to insure public safety, health and welfare insofar as they are affected by building construction, through structural strength, adequate egress facilities, sanitary equipment, light and ventilation and fire safety; and, in general, to secure safety to life and property from all hazards incident to the design, erection, repair, removal, demolition or use and occupancy of buildings, structures or premises.

No reference is made to individuals, citizens or residents as was made in the Ohio law in *Goss v. Lopez, supra.* The protection afforded is only to the general public. Indeed, another provision of the Code seeks to avoid any possible use of the Code to create individual interests in the duties established. Section 107.8 of the Building Code specifically relieves any "building official, officer or employee charged with enforcement of this code . . . from liability for acts performed under any of its provisions or by reason of any act or omission in the performance of his official duties in connection therewith," as long as the official was acting in good faith and without malice. While that provision indicates an intent on the part of the framers to have the Code create some enforceable duties owed to the public at large, it also unambiguously reveals their intent not to create any individual liability interest in those duties. In order to find an intention that the provision created individual property interests,

the Court would have to find that in the same breath in which the County Council created an entitlement it took away the individual's right to redress the deprivation. It cannot be presumed that a legislative body would do a futile thing. 2A Sutherland, Statutory Construction § 45.12, p. 37 (4th ed. 1973). Hence, a court should avoid an interpretation of a statute "that would deny a remedy while recognizing a right." *Board of Retirement of Kern County Employees' Retirement Ass'n v. Terry,* 40 Cal. App.3d 1091, 115 Cal.Rptr. 718 (1974). To interpret the New Castle Code as creating a personal right to building inspections would have exactly that result.

Moreover, it seems unlikely that a technical document, such as the BOCA Building Code, which is designed to be adopted by a large variety of municipalities, would contain any provisions granting personal rights to the practices and procedures that it prescribes. The sections governing procedures, the sections upon which the plaintiffs rely, merely outline the means by which the county can ensure compliance with the Code and do not grant personal rights. Indeed, before the Court would be willing to find a grant of personal rights, it would require a clear statement from the legislative body adopting this 500 page tome that it intended to create such personal rights.

Finally, the Code seeks neither to protect the plaintiffs personally nor to serve the interests which they assert in this case. The ordinance does not seek to protect individual "homeowners," "residents," or even the purchasers of homes. The Code does not apply to *all* housing. Inspections are requires for new buildings only. If the Code sought to revise the rule of *caveat emptor* and protect all purchasers of homes, inspections would be required for every transfer. If it sought to protect residents and homeowners, it would seek to regulate

---

12. In determining the intent of the County Code the Court adopts the following rule of statutory construction.

> Intent is to be ascertained from the language used, if it is plain and unambiguous; or, if it is not, by considering the legislation in the

light of all of its provisions, the object which it seeks to accomplish, the pre-existing legislation upon the same subject matter, and all other relevant circumstances.

*McAdams v. Barbieri,* 143 Conn. 405, 123 A.2d 182, 187 (1956).

already existing structures. The Code requires only that such structures not be unsafe, unsanitary or fire hazards. Building Code § 124.0 (1975). In sum, the Code protects only the public in general, seeking a gradual increase in the quality of housing by mandating good building practices and procedures for any new construction.

Since the Court finds that the County Code creates no duties owed to the plaintiffs as individuals, it holds that the Code creates no Fourteenth Amendment property interests in them.

**2. The County Defendants' Commission Of A Tort Is Not A Fourteenth Amendment Deprivation Of Property.**

■ Plaintiffs' next contention is that the county's negligent inspections have tortiously caused them to pay more for their homes than they were worth and to incur additional expenses both in attempts to correct the defects and in meeting extraordinary operating expenses.[13] The plaintiffs contend that a wrong which is recognized and remedied by state tort law is a deprivation of property under the Fourteenth Amendment.

Assuming that a tort may have been committed, the Court is still compelled to find that no injury cognizable under § 1983 and

the Fourteenth Amendment occurred. The Supreme Court in two instances, *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) and *Screws v. United States*, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945), has held that the commission by a state official of a tort is not, by itself, a deprivation of a right cognizable under § 1983 or the Fourteenth Amendment. Here, as in *Paul v. Davis, supra*, plaintiffs must pursue their tort claims in state court.

**3. Plaintiffs Must Show That The Actions Of A Private Party Depriving Them Of Property Are Attributable To The State In Order To Establish A Violation Of The Due Process Clause.**

■ The plaintiffs' final contention is that when the county defendants issued the CO's and thus permitted title to pass on the plaintiffs' homes,[14] they made possible Mr. Real Estate Co.'s fraudulent sale and breach of contract and hence "caused" the plaintiffs to be deprived of property without due process. Thus, the issue presented is whether, by creating a situation which would permit a private party to deprive another of property, the state is itself either depriving the second party of property or causing the first party to deprive the second of property. The Court concludes that it is not.[15]

---

**13.** Plaintiffs allege that the county defendants caused a deprivation of their property by inducing them to rely, to their detriment, on both the county defendants' negligent inspection and their false certification that the homes complied with the Building Code.

**14.** Building Code § 120.1 prohibits the passing of title "to any new residential building or to the premises on which such new building is erected . . . for the purpose of the first residential occupancy thereof until the certificate of use and occupancy thereof shall have been issued." Thus, plaintiffs argue, by issuing a CO, the county permitted the offending sale and consequent loss of property. Plaintiffs contend that this permission is the same as authorization and causation.

The Court notes, at this point, that the plaintiffs allege that the county defendants also "caused" the deprivation by inducing reliance on their certification both that the buildings had been inspected and that they complied with the Code. This causation by negligence was dealt with separately in the previous sec-

tion of this opinion. That section dealt with causation by negligence and this section deals with causation by permission. The plaintiffs do not allege that the county defendants intended to cause Mr. Real Estate Co. to deprive them of property. The Court does not reach the issue of whether a state's action, undertaken with the intention of having one private party deprive another of property, would be an action violative of the due process clause.

**15.** This question has, apparently, arisen on at least two occasions in the past. In both cases, local landowners claimed that local officials had deprived them of property without due process when the officials' lax enforcement or non-enforcement of zoning ordinances allowed other private individuals to damage the plaintiffs' property. Although the Court in *Beaver v. Borough of Johnsonburg*, 375 F.Supp. 326 (W.D.Pa.1974) held such allegations to establish a violation of the Fourteenth Amendment due process clause, this Court will adhere to the contrary holding in *Sun Enterprises, Ltd. v.*

The only losses of property alleged in the plaintiffs' complaints were the direct result of the fraudulent sale of property by the private party, Mr. Real Estate Co. There are no allegations that the county defendants either intended that these sales take place, or that they encouraged or participated in the actions of Mr. Real Estate Co. Instead, by issuing CO's, the county defendants merely permitted a situation which allowed the fraudulent sale to take place. The Court finds, as a matter of law, that the allegations of the plaintiffs do not, for purposes of the due process clause, establish that the county defendants have "caused" a deprivation of property.[16]

Indeed, to hold otherwise would make every private deprivation of property which the State chose not to prohibit, by statute or by permit, into a deprivation of property by the State. This would cast state and local governments into the role of insurers against the very types of deprivations that they have chosen not to prohibit. This is not the intent of the Fourteenth Amendment.

Similar considerations have, in cases similar to the present one, led the Supreme Court to conclude that private individuals could not be held liable under § 1983 and the Fourteenth Amendment because their actions lacked the attributes of "state action." The Court has repeatedly held that where the State has neither actively encouraged some private activity nor actively involved itself with that activity, the State's refusal to prohibit the activity, whether embodied in the form of a statute or a permit, will not turn that private activity into the action of the State. *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978); *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974); *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972). The crux of the Court's determination, in these cases, of no state action, has been its finding that the state is in no way "responsible" for the private action and that the action is not "attributable" to the state. *Flagg Bros., Inc. v. Brooks, supra.* The fears of the Court, as expressed in *Flagg Bros.* are equally applicable to the case at hand:

> If the mere denial of judicial relief is considered sufficient encouragement to make the State responsible for those private acts, all private deprivations of property would be converted into public acts whenever the State, for whatever reason, denies relief sought by the putative property owners.

*Id.,* 436 U.S. at 165, 98 S.Ct. at 1738.

For the foregoing reasons the Court holds that the county defendants have violated none of the plaintiffs' constitutional rights and will grant the county defendants' motion to dismiss the complaint against them for failure to state a valid cause of action.

### III. *THE BANK'S 12(b)(1) MOTION*

■ The Court must still dispose of the Bank's motion to dismiss the complaint for

---

*Train,* 394 F.Supp. 211, 222 (S.D.N.Y.1975), aff'd, 532 F.2d 280 (C.A.2, 1976).

> As with the state defendants, plaintiffs' allegations against the town defendants are insufficient to establish federal jurisdiction. The damage allegedly being wrought upon the plaintiffs stems from the activities of the private defendants. Such injuries to plaintiffs are not authorized by the permits issued by the town defendants; and although the private defendants may in a sense be encouraged in their alleged transgressions by lackluster enforcement of the law by the town defendants, the actions of the town defendants as alleged in the complaint are not such as would raise a substantial question of deprivation or confiscation of property under the Fifth and Fourteenth Amendments. 394 F.Supp. at 222.

16. The Court is guided in this decision not by plaintiffs' purely conclusory allegations that the county defendants have caused them to be deprived of property but by its own examinations of the facts alleged in the complaint.

**1150**

lack of subject matter jurisdiction. The Bank and Mr. Real Estate Co. were added to this action as pendent *parties* and no independent basis of Federal jurisdiction has been alleged. For the purpose of acting on this motion, the Court will assume, *arguendo*, that a Federal court has the discretionary power to exercise pendent party jurisdiction.[17] Nevertheless, in the present case, the Court concludes that it should decline to exercise that power. It is guided to this conclusion by the express example given by the Supreme Court in *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) of those situations where pendent jurisdiction ought not to be exercised.

There the Court stated:

> Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

Given this unambiguous directive, the Court will dismiss the plaintiffs' state claims against the Bank and Mr. Real Estate Co. for lack of subject matter jurisdiction.

An Order will be entered in accordance with this Opinion.

---

17. The Supreme Court's decision in *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976) left the status of pendent party jurisdiction unclear. That case involved the attempt to add a party which, under the law at that time, had been specifically excluded from the application of the statute under which subject matter jurisdiction was asserted. The language of the Court leaves open the question of whether a party that had not been specifically given immunity from the jurisdiction of the federal courts under the statute granting jurisdiction over the principle cause of action could be added as a pendent party on a claim founded purely upon state law.