48 F.3d 674
 Charles ZAHRA, Plaintiff-Appellant-Cross-Appellee,
v.
TOWN OF SOUTHOLD, Victor Lessard, Curtis Horton and Vincent
R. Wieczorek, Defendants-Appellees-Cross-Appellants.
 No. 1746, Docket 93-9067.
 United States Court of Appeals,
Second Circuit.
 Submitted May 26, 1994.
Decided Feb. 21, 1995.
 
 Joseph C. Savino, Mattituck, NY (Janet Geasa, Wickham, Wickham & Bressler, P.C., of counsel), for plaintiff-appellant-cross-appellee.
 Francis J. Yakaboski, Riverhead, NY (Douglas R. DeFeo, Smith, Finkelstein, Lundberg, Isler & Yakaboski, Riverhead, NY, of counsel), for defendants-appellees-cross-appellants.
 Before: VAN GRAAFEILAND, PIERCE, and ALTIMARI, Circuit Judges.
 PIERCE, Senior Circuit Judge:
 
 
 1
 Plaintiff Charles Zahra appeals from a final judgment entered in the United States District Court for the Eastern District of New York (Leonard D. Wexler, Judge ), following a jury trial. Zahra brought this action under 42 U.S.C. Sec. 1983 against the Town of Southold, Victor Lessard, Curtis Horton and Vincent R. Wieczorek (collectively "defendants"), alleging substantive due process and equal protection violations arising from defendants' revocation of a building permit and initial refusal to perform an insulation inspection. Zahra appeals from so much of the court's judgment as (1) dismissed his substantive due process claims against the Town of Southold and Wieczorek, (2) dismissed his equal protection claim, and (3) limited his damages claims. Defendants cross-appeal the denial of their motion for judgment as a matter of law on the ground of, inter alia, qualified immunity.
 
 
 2
 We reverse the district court's denial of judgment as a matter of law in favor of defendants based on qualified immunity, remand to the district court for entry of judgment as a matter of law in favor of defendants on the ground of qualified immunity, and affirm in all other respects.
 
 BACKGROUND
 
 3
 Zahra is the owner of various parcels of real property located in the Town of Southold, New York ("the Town"). Defendants are the Town and three individuals employed by the Town's Building Department ("Building Department"), namely, Lessard, the principal building inspector, Horton, a building and ordinance inspector, and Wieczorek, an ordinance inspector.
 
 
 4
 On September 18, 1986, Zahra entered into an agreement to purchase a two-story building known as the "Coffee Pot" located in the Town. The agreement was contingent upon Zahra's obtaining a building permit to renovate the Coffee Pot into a first floor restaurant and second floor apartment. Zahra submitted an application along with drawn plans to the Building Department, and was granted a building permit on October 27, 1986, signed by Lessard. He then closed title and commenced renovations the following Spring. Soon thereafter, Zahra encountered structural problems on the second floor of the Coffee Pot, such as dry rot and inadequate spacing of the studies, which required him to remove the balance of the second floor. Although he informed Lessard of his plans and received oral approval to do whatever was necessary, he did not submit new plans to the Building Department reflecting a one-story building. Subsequently, on September 22, 1987, Horton issued an order to remedy to Zahra directing him to "STOP ALL WORK NOT IN CONFORMITY WITH THE PROVISIONS OF THE PLANS OR SPECIFICATIONS OF THE BUILDING PERMIT." The following day, Zahra returned to the Coffee Pot to secure the job site and Horton issued him an appearance ticket charging a criminal offense of disobeying the stop work order. The charge was later dismissed, but the stop work order remained in effect.
 
 
 5
 On November 5, 1987, Horton issued a second order to remedy to Zahra, which revoked the Coffee Pot's building permit for "not following plans, did not comply with a stop work order." This second order was issued on the same day that Zahra sought to review the Building Department's public records to determine if other property owners in the Town working on similar projects were being treated differently. Thereafter, Zahra continued to inspect the Building Department's records, and, using copies of some of the inspected files, applied to the Town's Zoning Board of Appeals ("ZBA") for reinstatement of the building permit. On April 14, 1988, the ZBA upheld the revocation, finding that Zahra "proceeded with work in excess of the plans submitted to the Building Department."
 
 
 6
 On August 8, 1988, the Town Board held a work session to review certain files that Zahra alleged proved that others were being treated differently. Several of the files were referred to the ZBA for an opinion as to whether the Southold Town Zoning Code ("Town Code") had been complied with. The ZBA found some improprieties regarding the files, but from the record, it is unclear what, if any, action was taken. At Zahra's urging, the Town later hired an attorney, Barry L. Warren, to investigate the allegations. Warren's investigation consisted of reading a transcript and speaking to Zahra and some of the Town's employees. He then rendered an oral status report to the Town Board, which was not made public.
 
 
 7
 Nine days after the Town Board's August 8, 1988 work session, on August 17, 1988, Wieczorek issued two more orders to remedy to Zahra relating to other properties that he owned in the Town--one charged violations for "(1) No Building Permit for Pool Deck, (2) Using Swimming Pool without a Certificate of Occupancy"; the other charged violations for "(1) Manufacturing is not a permitted use in a B-1 district[,] (2) Failure to obtain site plan approval for (2) two manufacturing businesses." On September 28, 1988, Wieczorek served Zahra with appearance tickets in connection with these two orders. Both actions were ultimately dismissed.
 
 
 8
 Zahra, in the meantime, sought reinstatement of the revoked building permit by commencing an Article 78 proceeding in the New York State Supreme Court, Suffolk County, against the ZBA. On November 17, 1988, Judge Melvyn Tanenbaum reversed the ZBA's affirmance of the revocation and ordered the building permit reinstated. Zahra v. Southold Town Board of Appeals, No. 7725-88, slip op. at 3 (N.Y.Sup.Ct. Nov. 17, 1988). Judge Tanenbaum found that the evidence failed to support the ZBA's findings, and instead showed that Zahra "made efforts to renovate and add to the building in a sound, workmanlike manner in accordance with the plans submitted to the Town," id. at 2, and the ZBA's decision "effectively prevented him from conducting his restaurant business," id. at 3. He made no determination as to whether Zahra could continue to use the second floor apartment and remanded that issue to the ZBA. Id.
 
 
 9
 Thereafter, Zahra resumed his renovations of the Coffee Pot, and received favorable inspections for the foundation, framing, and plumbing. After having insulation installed on both the first and second floors, he sought to have the Building Department perform an insulation inspection. Lessard refused to order the inspection, and, on July 10, 1989, wrote a letter to Zahra directing him not to proceed with further renovations until he obtained approvals from the Health Department and the New York State Board of Review, as well as a satisfactory determination from the ZBA. Upon receiving the letter, Zahra commenced a second Article 78 proceeding against the Town and Lessard, in the nature of mandamus, seeking an order compelling them to perform the inspection. On December 15, 1989, Judge Tanenbaum granted Zahra's petition and ordered Lessard to conduct the inspection, finding that Lessard's decision to not inspect was "tantamount to a stop work order since renovations [could not] continue without the required insulation inspection." Zahra v. Town of Southold, No. 15798-89, slip op. at 3 (N.Y.Sup.Ct. Dec. 15, 1989). Judge Tanenbaum further found:
 
 
 10
 [Zahra] has the right to renovate his building in accordance with the submitted plans so that he may conduct his restaurant business. [Lessard's] discovery of state code violations concerning the use of the second floor as an apartment cannot prevent [Zahra] from completing his first floor restaurant and the exterior shell of the building. In this regard the building inspector has a legal duty to conduct timely inspections and his refusal to do so violates [Zahra's] rights and is therefore arbitrary and capricious. To refuse to act under these circumstances violates the lawful duties imposed upon the office of a town building inspector. Therefore mandamus must issue since the inspector is required by law to conduct such inspections and to take appropriate action.
 
 
 11
 Id. at 3-4 (citations omitted). Judge Tanenbaum left the question regarding the second floor apartment for administrative resolution. Id. at 4. The Town appealed to the New York State Supreme Court, Appellate Division, which affirmed on June 10, 1991. Zahra v. Town of Southold, 174 A.D.2d 626, 573 N.Y.S.2d 870 (App.Div.1991). The insulation inspection was later scheduled, and reinstatement for the second floor apartment was subsequently granted.
 
 
 12
 On September 28, 1990, Zahra commenced the present action pursuant to 42 U.S.C. Sec. 1983 asserting, inter alia, substantive due process claims against all defendants based on their earlier revocation of the building permit and initial refusal to perform the insulation inspection, and an equal protection claim against the Town, Lessard and Wieczorek due to alleged selective and discriminatory prosecution of the Town Code. Approximately two and one-half years later, on January 15, 1993, Zahra sought leave to amend his complaint because of "new developments." He alleged improprieties involving the Health Department relating to the Coffee Pot's sanitary system and water supply; he cited to newspaper articles suggesting that certain actions were taken against him due to personal grudges; and he alleged that the Town withdrew all of its funds from a local bank upon being made aware that the bank granted Zahra a well-water easement. The district court directed counsel to proceed to trial, and the matter was tried before a jury commencing in March 1993.
 
 
 13
 At the close of the evidence, defendants moved for dismissal of all claims, and asserted the defense of qualified immunity. The court dismissed the Town from the action, finding that there was "not a shred of evidence of any policy by the Town." The court then dismissed Zahra's equal protection claim because it found that Zahra's proof was "absolutely lacking that he was equally situated" as others; the jury was thus directed to not consider testimony proffered at trial concerning the swimming pool, deck and manufacturing businesses. The action against Wieczorek was also dismissed, the court finding that he was named essentially based upon the equal protection claim. A decision on the qualified immunity question was reserved.
 
 
 14
 On the remaining substantive due process claims, the court found that Zahra had a "property interest" in the building permit, and, thus, submitted the question of whether there was a substantive due process violation based on its revocation to the jury as against Lessard and Horton.[1] The court refused, however, to submit to the jury a substantive due process claim based on Lessard's refusal to initially perform the insulation inspection. Although defendants asserted collateral estoppel based on Judge Tanenbaum's decisions, the court found no collateral estoppel and instructed the jury that it could consider the two rulings as evidence, though not as conclusive.[2]
 
 
 15
 The jury found that Lessard and Horton properly issued the stop work order, but that they did not properly revoke the building permit. The jury further concluded that Lessard, unlike Horton, acted maliciously or arbitrarily, and, accordingly, awarded compensatory damages in the amount of $25,000 against Lessard only. No punitive damages were awarded. Lessard requested that the verdict be set aside as against the weight of the evidence and as being excessive, which the court denied. Lessard later moved for judgment as a matter of law, or, in the alternative, for a new trial, arguing that the verdict was inconsistent, contrary to law, contrary to the weight of the evidence, excessive, and insufficient to defeat his claim of qualified immunity. On September 14, 1993, the district court entered final judgment, which (1) dismissed Zahra's equal protection claim; (2) dismissed Zahra's substantive due process claims against the Town and Wieczorek; (3) awarded no compensatory or punitive damages against Horton; (4) awarded compensatory damages against Lessard in the amount of $25,000, but no punitive damages; and (5) awarded costs associated with the substantive due process claim against Lessard. This appeal followed.
 
 DISCUSSION
 
 16
 The principal issues are: (1) whether the district court erred in refusing to submit to the jury Zahra's claim of a substantive due process violation based on defendants' initial refusal to perform the insulation inspection; (2) whether the court erred in dismissing Zahra's equal protection claim; (3) whether the court was correct in dismissing the action against the Town; (4) whether Zahra should have been allowed to amend his complaint; (5) whether Zahra was given a sufficient opportunity to develop his case at trial; and (6) whether the district court erred in denying defendants' motion for judgment as a matter of law based upon the defense of qualified immunity. We rule upon these issues, in turn.
 
 A. Substantive Due Process
 
 17
 We first address Zahra's claim of a substantive due process violation due to defendants' refusal to initially perform the insulation inspection. This question requires us to examine, once again, our Circuit's application of the Due Process Clause of the Fourteenth Amendment to the United States Constitution in the context of land-use regulation. In assessing this issue, we are mindful of the general proscription that "federal courts should not become zoning boards of appeal to review nonconstitutional land[-]use determinations by the [C]ircuit's many local legislative and administrative agencies." Sullivan v. Town of Salem, 805 F.2d 81, 82 (2d Cir.1986). Nevertheless, we have acknowledged that we should entertain such claims where a landowner's constitutional rights are indeed infringed by local land-use actions. See Brady v. Town of Colchester, 863 F.2d 205, 215 (2d Cir.1988). In fact, in such an instance, "our duty to protect the constitutional interest is clear." Sullivan, 805 F.2d at 82.
 
 
 18
 To state a substantive due process claim, a party must first establish that he had a valid "property interest" in a benefit that was entitled to constitutional protection at the time he was deprived of that benefit. Brady, 863 F.2d at 211-12 (citing Board of Regents v. Roth, 408 U.S. 564, 576-77, 92 S.Ct. 2701, 2708-09, 33 L.Ed.2d 548 (1972)). This Circuit uses a strict "entitlement" test to determine whether a party's interest in land-use regulation is protectible under the Fourteenth Amendment. Gagliardi v. Village of Pawling, 18 F.3d 188, 192 (2d Cir.1994); RRI Realty Corp. v. Incorporated Village of Southamptom, 870 F.2d 911, 918 (2d Cir.), cert. denied, 493 U.S. 893, 110 S.Ct. 240, 107 L.Ed.2d 191 (1989); Yale Auto Parts, Inc. v. Johnson, 758 F.2d 54, 58-59 (2d Cir.1985). This inquiry stems from the view that a property interest can sometimes exist in what is sought--in addition to the property interest that exists in what is owned--provided there is a "legitimate claim of entitlement" to the benefit in question. RRI Realty, 870 F.2d at 915; Yale Auto Parts, 758 F.2d at 58. The analysis focuses on the extent to which the deciding authority may exercise discretion in arriving at a decision, rather than on an estimate of the probability that the authority will make a specific decision. See, e.g., Walz v. Town of Smithtown, 46 F.3d 162, 168 (2d Cir.1995) (homeowner had property interest in an excavation permit because superintendent of highways had no discretion to decline to issue it if the application stated the nature, location, extent and purpose of the proposed excavations); Gagliardi, 18 F.3d at 192-93 (landowners had no property interest in enforcement of zoning laws for adjacent property, since municipal officials had broad discretion in determining whether to grant or deny building permit, site plan and variances); RRI Realty, 870 F.2d at 918-19 (no property interest existed in building permit because town officials had discretion to either grant or deny the permit). We believe that this standard appropriately balances the need for local autonomy, with recognition of constitutional protection at the very outer margins of municipal behavior. It represents an acknowledgement that decisions on matters of local concern should ordinarily be made by those whom local residents select to represent them in municipal government--not by federal courts. It also recognizes that the Due Process Clause does not function as a general overseer of arbitrariness in state and local land-use decisions; in our federal system, that is the province of the state courts. See, e.g., Pearson v. City of Grand Blanc, 961 F.2d 1211, 1221-23 (6th Cir.1992) (distinguishing the role of federal courts in land-use cases from the more rigorous review undertaken in such cases by state courts); Shelton v. City of College Station, 780 F.2d 475, 482-83 (5th Cir.) (en banc) (same), cert. denied, 477 U.S. 905, 106 S.Ct. 3276, 91 L.Ed.2d 566 (1986).
 
 
 19
 Zahra argues that he had a protectible "property interest" in the insulation inspection of the Coffee Pot, and that the district court therefore erred in refusing to submit to the jury his claim of a substantive due process violation based on defendants' initial refusal to perform the inspection. He maintains that he had a "property interest" in the insulation inspection inasmuch as the building permit entitled him to renovate the Coffee Pot, and defendants' refusal to perform the inspection rendered the issuance of the building permit that he had sought moot. Zahra further argues that he had a "property interest" in the insulation inspection because Lessard, as principal building inspector, was a public officer who was charged with the responsibility of enforcing the Town Code, and that Lessard therefore had a mandatory rather than discretionary duty to perform the inspection. Defendants respond that while one may have a "property interest" in the result of an application process, there is no property interest in any aspect of the process, such as an inspection.
 
 
 20
 The issue presented--whether Zahra had a constitutionally protectible "property interest" in the insulation inspection--is novel. In essence, Zahra is attempting to define a derivative property interest based upon an existing property interest.[3] His position is that since he had a "property interest" in the building permit (a question that we do not pass upon herein), he necessarily had a "property interest" in the insulation inspection, since he could not conduct the activities permitted by the building permit in the absence of the inspection. Alternatively, he is requesting that this Circuit recognize that a "property interest" in the insulation inspection was created because Lessard was charged with the duty of enforcing the Town Code, and, thus, had no discretion regarding whether to perform the inspection. We are unpersuaded by both courses of reasoning, and hold that the district court did not err in declining to instruct the jury concerning a substantive due process violation based on defendants' refusal to perform the insulation inspection, as there was no constitutionally protectible "property interest" in such an inspection.
 
 
 21
 While we acknowledge that, in certain circumstances, a party may have a constitutionally protectible "property interest" in a benefit that affects land use--i.e. a building permit, certificate of occupancy, zoning variance, excavation permit or business license--see, e.g., Walz, 46 F.3d 162, 168; RRI Realty, 870 F.2d at 917; Brady, 863 F.2d at 212-13; Sullivan, 805 F.2d at 84-85, we do not recognize, at least on the facts of this case, the existence of such a "property interest" in the procedures giving rise to such an interest. Zahra, in attempting to define a derivative property interest in an insulation inspection from an existing property interest in a building permit, misinterprets the role of building inspections under the Town Code.
 
 
 22
 Section 100-281 of the Town Code, which governs building permits, provides that "[n]o building ... shall be erected, reconstructed, restored, moved or structurally altered without a building permit duly issued upon application to the Building Inspector." We find instructive the definition of "building permit" stated in Green v. Irwin, 174 A.D.2d 879, 570 N.Y.S.2d 868, 871 (App.Div.1991) (emphasis supplied):
 
 
 23
 [A] building permit is an initial document, conditionally issued, allowing work to begin on a specified project. The work is to be done according to the applicable building, fire and safety codes and regulations, and contemplates ongoing inspections for the purpose of facilitating the issuance of a final certificate of occupancy.
 
 
 24
 Further, Sec. 100-280(D) of the Town Code, which discusses the duties of a building inspector, states that "[t]he Building Inspector shall make the necessary inspections for the purpose of ascertaining whether or not existing conditions comply with the provisions of this chapter." (Emphasis supplied).
 
 
 25
 With guidance from these definitions, we conclude that the role of an inspection such as the insulation inspection presently at issue, is to facilitate the issuance of a particular permit or certificate, not to create an independent "property interest" in the inspection itself.[4] The mere existence of procedures for obtaining a permit or certificate do not, in and of themselves, create constitutional "property interests." Were we to hold otherwise, aggrieved property owners would be empowered to bring constitutional challenges at virtually every stage of the building process in municipalities. We expressly decline to announce a rule that would obligate federal courts to consider endless numbers of alleged "property interests" arising not from the benefits themselves, but as extensions of existing or sought property interests.
 
 
 26
 We further disagree with Zahra that a "property interest" in the insulation inspection was created based on the duty of Lessard to enforce the Town Code. Though Zahra can argue that a property interest in the insulation inspection arose from Judge Tanenbaum's December 15, 1989 decision ordering it, the issue we decide herein is whether such an interest rises to a constitutional level. Our precedents have firmly established that the mere violation of a state law does not automatically give rise to a violation of federal constitutional rights:
 
 
 27
 Indeed, even an outright violation of state law in the denial of a license will not necessarily provide the basis for a federal claim, at least when the applicant has a state law remedy. Otherwise every disappointed applicant, even though the state provided reasonably adequate redress, could invoke federal jurisdiction on the claim that the state administrative body acted arbitrarily in violation of his federal due process rights. To permit an influx of such cases into federal courts would violate principles of federalism, promote forum-shopping, and lead to unnecessary state-federal conflict with respect to governing principles in an area principally of state concern.
 
 
 28
 Yale Auto Parts, 758 F.2d at 58-59 (citation omitted); see also RRI Realty, 870 F.2d at 919 (although plaintiff was entitled to a building permit under state law, for purposes of a property interest under the Due Process Clause, the claim could not be fragmented). In the view we take of the species of the benefit sought herein--a procedure that facilitates the issuance of a permit or certificate--we believe it would be anomalous to recognize that a constitutionally protectible "property interest" exists in the subject insulation inspection. Zahra may be entitled to have the inspection compelled under state law, but we hold that he has no "property interest" in the insulation inspection which is protected by the Due Process Clause of the Fourteenth Amendment. Accordingly, we conclude that the district court did not err in refusing to present this claim to the jury.
 
 B. Equal Protection
 
 29
 We next decide whether the district court erred in dismissing Zahra's equal protection claim. Since the court granted defendants' motion for dismissal of this claim prior to submitting it to the jury, we review this issue in accordance with the standards applicable to appellate review of a motion for directed verdict, which by the 1991 amendment to Fed.R.Civ.P. 50, is now termed "judgment as a matter of law." See Fed.R.Civ.P. 50 advisory committee note to 1991 amendment (the term "judgment as a matter of law" replaces both the terms "directed verdict" and "judgment notwithstanding the verdict").
 
 
 30
 "Rule 50 allows a defendant, after the close of the plaintiff's case, to move for judgment as a matter of law if, with respect to an issue essential to the plaintiff's case, there is no legally sufficient evidentiary basis for the jury to find in favor of the plaintiff." Piesco v. Koch, 12 F.3d 332, 340 (2d Cir.1993) (citing Fed.R.Civ.P. 50(a)). The district court is required to deny such a motion unless, "viewed in the light most favorable to the nonmoving party, 'the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [persons] could have reached.' " Cruz v. Local Union No. 3 of Int'l Bhd. of Electrical Workers, 34 F.3d 1148, 1154-55 (2d Cir.1994) (quoting Simblest v. Maynard, 427 F.2d 1, 4 (2d Cir.1970)). We will overturn the grant of judgment as a matter of law only "[i]f, drawing all reasonable inferences in favor of the nonmoving party and making all credibility assessments in his favor, there is sufficient evidence to permit a rational juror to find in his favor...." Sir Speedy, Inc. v. L & P Graphics, Inc., 957 F.2d 1033, 1039 (2d Cir.1992); accord Powell v. Gardner, 891 F.2d 1039, 1043 (2d Cir.1989).
 
 
 31
 Zahra's equal protection claim is based entirely upon an allegation that the Town, Lessard and Wieczorek selectively enforced the Town Code against him when they issued the August 17, 1988 orders to remedy and subsequent appearance tickets pertaining to the swimming pool, deck and manufacturing businesses at Zahra's other properties. The district court granted judgment as a matter of law in favor of defendants based on its finding that Zahra's proof was insufficient to establish that he was equally situated as others. On appeal, Zahra argues that sufficient evidence was presented at trial to raise a question of fact as to whether he was improperly "singled out," thus violating his equal protection rights. Specifically, he submits that the evidence established that: (1) there were over one hundred Town residents who were using their pools without certificates of occupancy; (2) there were only two occasions during Wieczorek's tenure in which other Town residents were issued violations for using their pools without first obtaining certificates of occupancy, and that in those instances, the individuals were also cited for other infractions or the subject property was dissimilar; (3) a building permit was not required for the deck because it was on grade and thus a walkway; (4) at least four other businesses engaged in manufacturing activities in the B-1 zone, but none of those businesses were issued zoning violations; and (5) the violations were issued nine days after the Town Board's August 8, 1988 work session where Zahra alleged improprieties on behalf of the Building Department. Defendants present evidence to dispute Zahra's factual contentions, but the gravamen of their position is that Zahra presented insufficient proof that he was treated selectively or that defendants acted maliciously or with bad faith intent.
 
 
 32
 The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution "is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985) (citing Plyler v. Doe, 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982)). Zahra's equal protection claim herein is not a challenge to the Town Code--it is a claim of "selective enforcement" of the Town Code. Though we have previously noted that selective enforcement is a "murky corner of equal protection law in which there are surprisingly few cases," LeClair v. Saunders, 627 F.2d 606, 608 (2d Cir.1980), cert. denied, 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981), we have also ruled that such a claim is proper where it is established that:
 
 
 33
 (1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person.
 
 
 34
 FSK Drug Corp. v. Perales, 960 F.2d 6, 10 (2d Cir.1992); accord LaTrieste Restaurant & Cabaret Inc. v. Village of Port Chester, 40 F.3d 587, 590 (2d Cir.1994); Terminate Control Corp. v. Horowitz, 28 F.3d 1335, 1352 (2d Cir.1994); LeClair, 627 F.2d at 609-10.
 
 
 35
 Upon reviewing the record and considering the evidence in the light most favorable to Zahra, we conclude that Zahra failed to establish an equal protection violation adequate to survive defendants' motion for judgment as a matter of law. The flaw in Zahra's equal protection claim is that Zahra assumes that to prevail he need only prove that he was treated differently from others. Our precedents, however, have firmly established that "equal protection does not require that all evils of the same genus be eradicated or none at all." LeClair, 627 F.2d at 608 (citing Railway Express Agency, Inc. v. New York, 336 U.S. 106, 109-10, 69 S.Ct. 463, 466, 93 L.Ed. 533 (1949)). Rather, to sustain his equal protection claim based on the alleged selective enforcement of the Town Code, Zahra must satisfy both prongs of the test stated above.
 
 
 36
 Zahra has submitted evidence suggesting that he was the only person in the Town charged with the violations in question. Even were we to assume, arguendo, that Zahra established a genuine factual dispute as to the "selective treatment" prong of the above test in light of this evidence, the record nonetheless indicates that Zahra failed to proffer sufficient evidence to meet the demands of the second prong. Because Zahra never alleged that he was issued the subject violations because of his race, religion, or to prevent him from exercising a constitutional right, we review the record for evidence of a malicious or bad faith intent to injure. See, e.g., FSK Drug, 960 F.2d at 10; LeClair, 627 F.2d at 610. We find the evidence of this insufficient as a matter of law.
 
 
 37
 Although Zahra alleged malice in his complaint,[5] the evidence presented at trial does not support such a finding. The evidence suggesting that Zahra was "treated differently" from others does not, in itself, show malice. See LeClair, 627 F.2d at 610-11 (allegation of different treatment did not alone demonstrate malice). Indeed, on the present record, virtually the only factor that could, conceivably, establish such malice or bad faith is the timing of the violations, to wit, issuance within nine days after the Town Board's August 8, 1988 work session at which Zahra alleged improprieties on behalf of the Building Department. However, simply because the violations were issued nine days after this meeting does not, in and of itself, establish a malicious or bad faith intent to injure Zahra. Wieczorek's testimony indicates that he initially inspected Zahra's pool and deck in May 1988, at Zahra's request. The order to remedy was issued three months later, with Wieczorek attributing the delay in issuance to the "course of the investigation" and "other duties." Although Wieczorek testified that he may have discussed the violation with others in the Building Department, including Lessard, he did not testify as to any improprieties. Further, Zahra does not deny that he did not have a certificate of occupancy for his pool.
 
 
 38
 Similarly, the violation regarding the manufacturing businesses was issued following a fire inspection report, which revealed a possible violation. There was also evidence suggesting that the four other businesses in the B-1 zone were either engaged in nonconforming uses, or that manufacturing was not occurring. In any event, just because Zahra was cited for a possible violation and these four other businesses were not, does not, standing alone, establish a malicious or bad faith intent to injure. See id. at 608 ("Mere failure to prosecute other offenders is not a basis for a finding of denial of equal protection.").
 
 
 39
 We therefore conclude that the evidence was insufficient, as a matter of law, to permit a rational juror to find a violation of Zahra's equal protection rights. We affirm the grant of judgment as a matter of law in favor of defendants on this claim.
 
 C. Municipal Liability
 
 40
 We now decide whether the district court erred in dismissing the action against the Town based on its finding that there was no evidence of a municipal policy. Zahra argues that the jury should have been allowed to consider the issue of the Town's liability because the evidence demonstrated that the Town did not meaningfully investigate or take any action against Lessard, Horton or Wieczorek, despite its awareness of violations such as those found by Judge Tanenbaum or alleged at the Town Board's August 8, 1988 work session. We disagree.
 
 
 41
 A municipality may not be held liable in an action under 42 U.S.C. Sec. 1983 for actions alleged to be unconstitutional by its employees below the policymaking level solely on the basis of respondeat superior. Monell v. Department of Social Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). To hold a municipality liable in such an action, "a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir.1983); see also Monell, 436 U.S. at 690-91, 98 S.Ct. at 2035-36; Ricciuti v. New York City Transit Auth., 941 F.2d 119, 122 (2d Cir.1991). We have previously ruled that a municipal policy may be inferred from the informal acts or omissions of supervisory municipal officials, Turpin v. Mailet, 619 F.2d 196, 200 (2d Cir.), cert. denied, 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980), and that "municipal inaction such as the persistent failure to discipline subordinates who violate [persons'] civil rights could give rise to an inference of an unlawful municipal policy of ratification of unconstitutional conduct," Batista, 702 F.2d at 397. See also Ricciuti, 941 F.2d at 123 (policy may be inferred from "evidence that the municipality had notice of but repeatedly failed to make any meaningful investigation into charges that police officers had used excessive force in violation of the complainants' civil rights"); Turpin, 619 F.2d at 201 ("where senior personnel have knowledge of a pattern of constitutionally offensive acts by their subordinates but fail to take remedial steps, the municipality may be held liable for a subsequent violation if the superior's inaction amounts to deliberate indifference or to tacit authorization of the offensive acts"). Our task herein is to determine whether sufficient evidence was presented at trial from which the existence of a municipal policy could be inferred. Sarus v. Rotundo, 831 F.2d 397, 401 (2d Cir.1987).
 
 
 42
 Although Zahra undertook to plead the existence of such a policy by stating in his complaint that the actions of the individual defendants "were made in their official capacities, constituted TOWN policy and were intended to be and were binding on the TOWN," (Compl. p 9), "[t]he mere assertion ... that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference," Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir.1993). We find the record devoid of any evidence from which a reasonable juror could have inferred the existence of a municipal policy.
 
 
 43
 Zahra's position on appeal is simply that the Town took no action against the individual defendants to "bring them into line," despite its awareness of the actions taken against Zahra or of possible violations involving others. The evidence, however, established that the Town actually held a work session, and did hire an attorney to investigate Zahra's allegations. Although Zahra asserts that this was done merely to placate him and give the appearance to the public that they took his complaints seriously, we find nothing in the record to support such an assertion. Furthermore, Zahra did not present evidence demonstrating that the Town's purported inaction constituted deliberate indifference or tacit encouragement of a violation of his constitutional rights. See Turpin, 619 F.2d at 201.
 
 
 44
 We conclude that Zahra failed to establish that the Town had a municipal policy that rendered it liable for any deprivation of Zahra's constitutional rights. Accordingly, we affirm the district court's dismissal of the action against the Town.
 
 D. Amendment of the Complaint
 
 45
 Next, we address Zahra's assertion that the district court abused its discretion by not allowing him to amend his complaint. Zahra filed his initial complaint on September 28, 1990; on January 15, 1993, he sought leave to amend, citing "new developments." Although Fed.R.Civ.P. 15(a) provides that leave to amend a complaint "shall be freely given when justice so requires," Fed.R.Civ.P. 15(a), it is within the sound discretion of the district court whether to grant or deny leave to amend. John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp., 22 F.3d 458, 462 (2d Cir.1994). "Undue delay and futility of the amendment, among other factors, are reasons to deny leave." Id.
 
 
 46
 It was entirely reasonable for the district court to deny a request to amend a complaint that was filed two and one-half years after the commencement of the action, and three months prior to trial. In our view, this constituted undue delay. See id. (no abuse of discretion in refusing to grant leave to amend a complaint where the amendment was sought more than four months after the court's deadline). Additionally, the request to amend appears to be futile. The "new developments" Zahra cited were based mainly upon newspaper articles suggesting that certain actions were taken against him due to personal grudges. We do not find it an abuse of discretion to deny a request to amend a complaint, particularly at such a late stage in the litigation, on such grounds.
 
 E. Failure to Develop the Facts
 
 47
 Zahra points to numerous incidents at trial that he alleges prevented him from developing his case. He primarily complains of instances when the court directed him to present his evidence more expeditiously, or elected to exclude certain evidence regarding his equal protection claim. A district court has wide discretion in controlling the admissibility of testimony and other evidence, and, absent a demonstration of abuse of discretion, its rulings will not be disturbed. Healey v. Chelsea Resources, Ltd., 947 F.2d 611, 619-20 (2d Cir.1991); George v. Celotex Corp. 914 F.2d 26, 28 (2d Cir.1990). We have carefully reviewed all of Zahra's allegations of abuse of discretion by the district court, and find no merit in any of his contentions.
 
 F. Qualified Immunity
 
 48
 Finally, we address defendants' cross-appeal based upon the defense of qualified immunity.[6] Defendants assert that Lessard and Horton were entitled to qualified immunity because at the time they revoked the Coffee Pot's building permit, they were reasonable in their belief that Zahra was not working in accordance with the plans approved by the Building Department. They therefore argue that the district court erred in not dismissing Zahra's action against them on this basis. We agree.
 
 
 49
 Qualified immunity shields government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); see also Natale v. Town of Ridgefield, 927 F.2d 101, 104 (2d Cir.1991); Robinson v. Via, 821 F.2d 913, 920 (2d Cir.1987). Whether a defendant actually violated a plaintiff's rights is not the central issue: "Even defendants who violate constitutional rights enjoy a qualified immunity that protects them from liability for damages unless it is further demonstrated that their conduct was unreasonable under the applicable standard." Davis v. Scherer, 468 U.S. 183, 190, 104 S.Ct. 3012, 3017, 82 L.Ed.2d 139 (1984); see also Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir.1991) ("[Q]ualified immunity is generally considered separate and apart from the merits of the case, even though plaintiff's factual allegations must be examined ... in resolving the immunity issue."); Collins v. Marina-Martinez, 894 F.2d 474, 478 (1st Cir.1990) ("Because qualified immunity does not address the substantive viability of a section 1983 claim, but rather the objective reasonableness of a defendant's actions, a plaintiff who is entitled to prevail on the merits is not necessarily entitled to prevail on the issue of qualified immunity."). "Essentially, if it is objectively reasonable for an official to believe that he or she is acting within constitutional and statutory bounds, the official will be insulated from liability stemming from his or her conduct." Natale, 927 F.2d at 104-05; accord Ayeni v. Mottola, 35 F.3d 680, 684 (2d Cir.1994); Kaminsky, 929 F.2d at 925. Upon reviewing the record herein in accordance with the standards applicable to review of denial of a motion for judgment as a matter of law,[7] see Cruz, 34 F.3d at 1154-55; Sir Speedy, 957 F.2d at 1039, we conclude that the district court erred in not granting defendants judgment as a matter of law on the basis of qualified immunity.
 
 
 50
 Zahra's challenge herein is to the revocation of the building permit. We will assume for purposes of our analysis that Zahra's entitlement to substantive due process based on the building permit was "clearly established." See Natale, 927 F.2d at 105 ("The threshold issue in determining the applicability of [the] qualified immunity defense is whether [the plaintiffs] had a 'clearly established right' to the permits at issue."); see also Amsden v. Moran, 904 F.2d 748, 752 (1st Cir.1990) (defendants conceded that revocation of land surveying license constituted deprivation of a property interest sufficient to clearly establish entitlement to due process), cert. denied, 498 U.S. 1041, 111 S.Ct. 713, 112 L.Ed.2d 702 (1991). Having identified Zahra's "clearly established right," we must evaluate Lessard and Horton's actions in light thereof to determine whether they "reasonably should have comprehended that their specific actions transgressed th[at] 'clearly established' right[ ]." Amsden, 904 F.2d at 752. See also Robinson, 821 F.2d at 921 ("[E]ven if the contours of the plaintiff's federal rights and the official's permissible actions were clearly delineated at the time of the acts complained of, the defendant may enjoy qualified immunity if it was objectively reasonable for him to believe that his acts did not violate those rights."). We find that, on the present record, it was objectively reasonable for Lessard and Horton to believe that they were acting within constitutional bounds at the time they revoked the building permit.
 
 
 51
 In our view, at the time the building permit was revoked, it was objectively reasonable to conclude that Zahra was not in compliance with the plans approved by the Building Department. The evidence established that after commencing renovations in the Spring of 1987, Zahra encountered structural problems that required removal of the balance of the Coffee Pot's second floor. Although he received oral approval from Lessard to do whatever was necessary, Zahra removed the second floor without submitting new plans to the Building Department reflecting a one-story building. Shortly thereafter, he was issued the order to remedy which ordered him to stop all work not in conformity with his approved plans.[8] The order to remedy which revoked the building permit was then issued two months later for "not following plans, did not comply with a stop work order." The record indicates that nothing was done by Zahra between the date the stop work order was issued and the date of the revocation to cure Zahra's original problems with the Building Department. Indeed, the revocation was upheld by the ZBA on April 14, 1988, with the ZBA finding that Zahra "proceeded with work in excess of the plans submitted to the Building Department." Thus, even the ZBA agreed that Zahra was proceeding in excess of his submitted plans. Although Judge Tanenbaum and the jury below ultimately reached a contrary conclusion, our concern is with the actions of Lessard and Horton at the time of the revocation. See Natale, 927 F.2d at 106. Specifically, in determining whether Lessard and Horton were entitled to prevail on the assertion of the defense of qualified immunity, our concern is with the objective reasonableness of their actions at the time, and is not a subjective inquiry into to their personal motives. See, e.g., Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986) ("Under the Harlow standard, ... an allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner."); Cartier v. Lussier, 955 F.2d 841, 843 (2d Cir.1992) ("A subjective inquiry into an officer's personal belief is rejected in favor of an objective analysis of what a reasonable officer in defendant's position would believe."); Kaminsky, 929 F.2d at 925 ("Subjective inquiry into a government employee's motivations in acting or refusing to act has been rejected as the doctrine's test...."). We find their actions at the time of the revocation of the building permit objectively reasonable. Cf. Walz, 46 F.3d at 169 (official could not have believed that he had discretion to deny an excavation permit as a means of extorting land from the plaintiffs; therefore, as a matter of law, he was not entitled to qualified immunity).
 
 
 52
 Furthermore, the order to remedy which revoked the Coffee Pot's building permit was issued pursuant to sections of the Town Code that permitted revocation of issued building permits in instances where the building inspector determined that work was not being performed in accordance with approved plans, or where there was a failure to comply with a stop work order. Section 100-142 of the Town Code, which was cited in the order to remedy, provided that the building inspector was authorized to revoke a building permit in the following instances:
 
 
 53
 C. Where he finds that the work performed under the permit is not being prosecuted in accordance with the provisions of the application, plans or specification[s].
 
 
 54
 D. Where the person to whom a building permit has been issued fails or refuses to comply with a stop order issued by the Building Inspector.
 
 
 55
 Section 100-143, which governed stop work orders, provided in pertinent part:
 
 
 56
 Whenever the Building Inspector has reasonable grounds to believe that work on any building or structure is being prosecuted ... not in conformity with the provisions of an application, plans or specifications on the basis of which a building permit was issued ... he shall notify the owner of the property ... to suspend all work, and any such persons shall forthwith stop such work and suspend all building activities until the stop order has been rescinded.
 
 
 57
 Thus, the Town Code, which has not been contested here, expressly permitted the challenged actions.
 
 
 58
 In sum, we conclude that Lessard and Horton were entitled to the defense of qualified immunity, since we find their actions at the time objectively reasonable. We therefore reverse the district court's denial of judgment as a matter of law in favor of defendants on the ground of qualified immunity, and remand to the district court with instructions to grant defendants judgment as a matter of law on this basis.
 
 CONCLUSION
 
 59
 Based on the foregoing, we reverse the district court's denial of judgment as a matter of law in favor of defendants based on qualified immunity, remand with instructions to grant judgment as a matter of law in favor of defendants on the ground of qualified immunity, and affirm the court's rulings in all other respects.
 
 
 
 [1]
 The court charged the jury as follows:
 Plaintiff must prove two elements in order to prevail. One element, that the defendants' actions were wrong in their decision to issue the stop work order and cancelling of the building permit. The decision of Justice Tannenbaum [sic] is not binding in this case. It is some evidence that defendant or defendants were wrong in issuing the stop work order and cancelling the building permit. ... The second element plaintiff must prove by a preponderance of the evidence is that the stop work order and the revocation, revoking of the permit was not because of a good faith mistake on the part of a defendant and on the applicable law but because of [an] indefensible reason such as impermissible political or personal animosity.
 Tr. 704-05.
 
 
 [2]
 None of the parties appeal the district court's rulings with regard to the collateral estoppel effect of Judge Tanenbaum's two decisions
 
 
 [3]
 We specifically note that as to the district court's finding of a "property interest" with respect to the building permit, no party has appealed or briefed that ruling, and we therefore decline to address it. Our analysis herein assumes, without deciding, that a protectible property interest in the building permit existed
 
 
 [4]
 There is scant judicial precedent concerning whether a constitutionally protectible property interest could arise from a building inspection. Our research reveals only two federal cases addressing the related issue of whether property interests existed in competently conducted building inspections, in cases where the plaintiffs sought to hold local government officials liable for injuries sustained from improperly performed inspections. In Wooters v. Jornlin, 477 F.Supp. 1140, 1144 (D.Del.1979), aff'd, 622 F.2d 580 (3d Cir.), cert. denied, 449 U.S. 992, 101 S.Ct. 528, 66 L.Ed.2d 289 (1980), the court utilized a three-prong test of its own design in determining whether a constitutionally protected property interest existed: "to establish the existence of a property interest in housing inspections, the plaintiffs must point to (1) an independent source of authority (2) that establishes an absolute duty (3) that is owed to them as individuals rather than as members of the undifferentiated public." The court applied this test because it viewed inspections as "governmental services," thus requiring a duty owed to the individual plaintiffs rather than to the general public. Id. Because there was neither an absolute duty to perform the inspections, nor a duty owned to the individual plaintiffs, the court held that no protected property interest was created. Id. at 1146, 1148
 The Wooters test was later adopted and applied in Gillies v. Utah County, 765 F.Supp. 692 (D.Utah 1991), where the plaintiffs claimed a right to rely on their building inspector's assessments to ensure building code compliance. They maintained that the inspector failed to perform inspections in a competent manner, failed entirely to perform several inspections and falsified building inspection forms. The claimed property interest was an interest in competently conducted building inspections. The court found the third element of the Wooters test dispositive, finding that "[b]uilding inspections are intended to benefit and safeguard the community as a whole." Id. at 695. Thus, the inspectors owed no duty to the plaintiffs individually and no constitutionally protected property interests existed. Id.
 No party to the instant appeal has raised any arguments on similar grounds, and we decline, at this time, to adopt such a rule. However, we do not foreclose the possibility that a test such as that stated in Wooters might be the proper analysis in a case involving a claim of an entitlement based on a "governmental service."
 
 
 [5]
 Zahra's complaint states: "The acts of all individual defendants as alleged herein were made intentionally or in reckless disregard of Zahra's rights, were made in bad faith and constitute a pattern of discrimination against Zahra." (Compl. p 10.)
 
 
 [6]
 Defendants also cross-appeal from the district court's denial of their motion for judgment as a matter of law on the grounds that (1) the verdict was inconsistent and against the weight of the evidence; (2) the jury's damages award was excessive; and (3) the jury did not follow the instructions of the court. In light of our ruling on the qualified immunity question, we need not address these issues
 
 
 [7]
 Although Zahra argues to the contrary, we find no procedural bar to our consideration of this issue, as we find that this question was properly before the court at the close of the evidence. See Cruz, 34 F.3d at 1155 (a motion for judgment as a matter of law at the close of the evidence is a prerequisite to judgment as a matter of law following the jury's verdict)
 
 
 [8]
 As stated previously, the jury found that the issuance of the stop work order was proper; no party has appealed that finding