**FRESH START SUBSTANCE SERVICES, LLC,**
plaintiff

v.

**J. Robert GALVIN, Commissioner, Department of Public Health, in his Official Capacity, defendant.**

No. 3:05–cv–1899 (CFD).

United States District Court,
D. Connecticut.

Feb. 13, 2009.

Thomas W. Bucci, Willinger, Willinger & Bucci, Bridgeport, CT, for plaintiff.

Daniel R. Shapiro, Attorney General's Office, Hartford, CT, for defendant.

### RULING ON MOTION FOR SUMMARY JUDGMENT

CHRISTOPHER F. DRONEY, District Judge.

Fresh Start Substance Services, LLC ("Fresh Start") brought this action under 42 U.S.C. § 1983 against the defendant, the Commissioner of the Connecticut Department of Public Health ("Department") in his official capacity, as a result of the Department's refusal to grant the plaintiff's application for a license to operate a methadone clinic in Bridgeport, Connecticut. The plaintiff alleges violations of its equal protection and due process rights under the United States Constitution as well as under the Connecticut Constitution and seeks both prospective relief and monetary damages. For the following reasons, the defendant's motion for summary judgment is granted.

### I. Background [1]

Fresh Start began the process of applying for a license to operate a methadone substance abuse treatment facility ("methadone clinic") in Bridgeport in October, 2003. On January 9, 2004, the Connecticut Office of Health Care Access ("OCHA") granted Fresh Start's application for a Certificate of Need for the establishment of the clinic. In accordance with Conn. Gen.Stat. § 19a–491, Fresh Start then applied to the Department for a license to operate the clinic. Vincent Curcio would be the Executive Director and General/Managing Partner of the clinic while Chiman Patel, M.D. would be its Medical Director.

The Department reviews written policies and procedures of a proposed methadone clinic prior to issuing a license, as part of the Department's obligation under the Regulations of Connecticut State Agencies ("Regulations") to determine that a facility is in compliance with the relevant statutes and regulations governing methadone clin-

---

**1.** The facts herein are taken from the parties' briefs, affidavits, and Rule 56 statements, and are undisputed except where otherwise noted.

ics. *See* Regulations § 19a–495–570(c)(4)(A). Fresh Start submitted written policies and procedures which the Department deemed not to comply with the Regulations.[2] Representatives of the Department met with Curcio in August, 2004 to discuss the need for revisions to the policies and procedures, and provided detailed recommendations regarding the necessary revisions.

The Department had received a complaint in June, 2004, alleging that Fresh Start was providing methadone to clients prior to receiving a license. The Department's investigation revealed the allegation to be untrue; however, the investigation did reveal other prohibited activity at the clinic,[3] including the clinic's receiving money prior to licensure, providing outpatient psychiatric services to approximately seventy clients, and paying social worker Claire Zang and Dr. Patel prior to obtaining the license. The investigation also revealed that Zang had an inappropriate relationship with a patient while working at Fresh Start; she admitted wrongdoing and agreed to disciplinary penalties. Dr. Patel also admitted that he practiced medicine as Clinical Director of Fresh Start between June of 2003 and February of 2006 and that he engaged in several types of misconduct during that time, including

improperly prescribing medicines and improperly allowing practical nurse George Stowe to package and dispense medications in an unauthorized manner. Dr. Patel entered into a Consent Order with the Department as a result of his conduct, agreeing (among other things) to never be employed by or work in a private free-standing facility for the care or treatment of substance abuse or dependent persons, and to pay a $3,000 civil penalty.[4]

In April, 2005, representatives of the Department visited the Fresh Start facility to assess its physical layout. No one was present at the facility, and when Mr. Curcio was called, he refused on the telephone to allow Department representatives into the facility. In May, 2005, the Department sent Curcio a letter informing him that the policies and procedures were still incomplete and inadequate, and that a site inspection would be required before a license was granted. Fresh Start submitted revised policies in June, 2005 but refused to meet with the Department to discuss the revisions and the Department's further comments. The Department suggested as early as August, 2004 that the clinic could open prior to obtaining a license through use of a pre-licensure Consent Order, as contemplated by Conn. Gen.Stat. § 19–491, but Fresh Start refused, as this Consent

**2.** The parties dispute whether Fresh Start submitted policies and procedures on or about March 24, 2004, prior to submitting written policies and procedures later that summer.

**3.** The plaintiff denies several of these allegations in its Rule 56(a)(2) statement; however, evidence in the record supports the defendants' account, and no substantial contrary evidence has been submitted. For example, Claire Zang testified at her deposition that Fresh Start paid her salary. Ex. D at pages 11–13. Curcio testified that Dr. Patel was paid through Fresh Start. Ex. F at page 31. Valerie Bryan's affidavit notes the results of the investigation at ¶¶ 22–24. Moreover, in

light of all of the other undisputed issues of fact, the unresolved factual disputes that may remain as to the extent of the other prohibited activity revealed by the investigation are not genuine issues of material fact that affect this ruling.

It should be noted that Fresh Start "object[ed]" to several paragraphs of the Rule 56 statement on the basis that the paragraphs are irrelevant; however, these objections are not denials of the facts contained in those paragraphs. *See, e.g.,* Plaintiff's Rule 56(a)(2) Statement at ¶¶ 39–62.

**4.** The Department states in its brief that it is considering disciplinary action against Stowe.

Order would have required Fresh Start to admit that during the time period of April 2004 to August 2004 it engaged in the practice of providing mental health or substance abuse treatment services without having a license to do so, and also mandated the payment of a $10,000 civil penalty. Several drafts of the Consent Order were proposed during August and September 2004, but none were accepted.

This action was commenced on December 13, 2005, and an amended complaint was filed in January, 2006 (the "First Substituted Complaint").

## II. Summary Judgment Standard

In a summary judgment motion, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *White v. ABCO Engineering Corp.*, 221 F.3d 293, 300 (2d Cir. 2000); *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 133 (2d Cir.2000). Once the moving party has met its burden, in order to defeat the motion the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505, and present such evidence as would allow a jury to find in his favor. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir.2000).

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505; *Graham*, 230 F.3d at 38. "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." *Carlton*, 202 F.3d at 134. "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury. *Sologub v. City of New York*, 202 F.3d 175, 178 (2d Cir.2000).

## III. Discussion

### A. Claims for Damages and Injunctive Relief

#### 1. Claims for Damages Are Barred

█ The First Substituted Complaint ("complaint") names the defendant Galvin in his official capacity only. The plaintiff agrees, in its memorandum in opposition to defendant's motion for summary judgment, that the state's Eleventh Amendment immunity bars a claim for damages against a state employee sued in his official capacity, because the state itself is the real party in interest. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 101, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Farid v. Smith*, 850 F.2d 917, 921 (2d Cir.1988). The plaintiff's memorandum notes that "The defendant in this action has not been sued in his official capacity for monetary damages." Accordingly, the Court finds that the claims for monetary damages against Galvin in his official capacity have been abandoned and summary judgment is granted as to all such claims. The Eleventh Amendment also bars any claims predicated upon violation of Connecticut state law, and, accordingly, summary judgment is granted as to these claims as well.

#### 2. No Bar to Prospective Injunctive and Declaratory Relief

█ The complaint also seeks declarative and injunctive relief, primarily an injunction against the violation of the plaintiff's due process and equal protection rights and an injunction requiring the defendant to issue the methadone clinic license to Fresh Start. In *Ex parte Young*,

209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), the Supreme Court carved out a narrow exception to the general rule of Eleventh Amendment immunity from suit. That exception permits a plaintiff to sue a state official in his official capacity, so long as the plaintiff seeks only prospective declaratory or injunctive relief to remedy an ongoing violation of federal law. *Id.; Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437, 124 S.Ct. 899, 157 L.Ed.2d 855 (2004); *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir.2007). Therefore the Court will consider the merits of the plaintiff's demands that the Court require Galvin to (1) refrain from violating the plaintiff's due process and equal protection rights and (2) issue the methadone clinic license. The parties do not dispute that because of the passage of time since the filing of this lawsuit, Fresh Start must complete additional administrative steps[5] before a license is issued. Accordingly, the Court will construe the requested relief as a request for an injunction requiring Galvin and the Department to reach a final, appealable decision as to whether Fresh Start is entitled to a license with respect to the completion of the procedural requirements at issue in this suit, so as to allow the plaintiff to proceed through the process of administrative appeals, should the Department decline to issue the license. The merits of this claim are addressed below.

## B. Constitutional Claims

### 1. Procedural Due Process

 The plaintiff claims that Galvin violated its procedural due process rights by failing to act upon its application for a license to operate a methadone clinic. In order to prevail upon a procedural due process claim, the plaintiff must show first the existence of a constitutionally protected property or liberty interest, and that the plaintiff did not receive adequate process before being deprived of that interest. *See, e.g., Mathews v. Eldridge*, 424 U.S. 319, 332–33, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), *Adams v. Suozzi*, 517 F.3d 124, 127 (2d Cir.2008). The plaintiff has failed to establish either requirement of the due process inquiry.

Fresh Start asserts a property interest in certain procedures, primarily obtaining a final decision on its application for a methadone clinic license within a certain time period. Any such property interests would be derived from an underlying property interest in receiving the methadone clinic license. However, even if such an underlying property interest in a license did exist, the Second Circuit has held that derivative property interests in procedures are not created by the existence of underlying property interests. *See Zahra v. Town of Southold*, 48 F.3d 674, 681 (2d Cir.1995) (finding no "derivative" property interest in the procedures giving rise to an existing property interest).

 Moreover, no property interest in a methadone clinic license exists here. In *Dean Tarry Corp. v. Friedlander*, the Second Circuit held that

> [T]he question of whether an applicant has a legitimate claim of entitlement to the issuance of a license or certificate should depend on whether, absent the alleged denial of due process, there is either a certainty or a very strong likelihood that the application would have been granted. Otherwise the application would amount to a mere unilateral expectancy not rising to the level of a

---

5. The plaintiff must obtain a new or renewed Certificate of Need from the Connecticut Office of Health Care Access before the Department may issue the license.

property right guaranteed against deprivation by the Fourteenth Amendment. 826 F.2d 210, 212 (2d Cir.1987) (internal citations omitted); see also 53 C.J.S. Licenses § 60 ("unless the statute is in mandatory terms, the power ... to grant licenses carries with it ... the power to exercise a reasonable discretion in granting or refusing licenses."). Fresh Start has no property interest in a license to operate a methadone clinic because the Department must exercise its judgment and discretion in requiring information or evidence from the applicant prior to deciding whether to grant such a license. *See* Conn. Gen.Stat. § 19a–491 ("Application for such license ... shall contain such information as the department requires, which may include affirmative evidence of ability to comply with reasonable standards and regulations...."). Statutory authority allows the Department to decide not to issue a ruling on an application, when it states reasons for that course of action. Conn. Gen.Stat. § 4–176(e)(5).[6] Statutory authority also allows the Department to require that the plaintiff sign a consent order prior to being granted a license, as suggested to Fresh Start during the course of the application discussions. *See* Conn. Gen.Stat. § 19a–491 ("Application for such license ... shall contain such information as the department requires, which may include affirmative evidence of ability to comply with reasonable standards and regulations.... The commissioner may require as a condition of licensure that an applicant sign a consent order providing reasonable assurances of compli-

ance with the Public Health Code.") In light of the prior violations of statutory and regulatory requirements by Fresh Start and its staff, the Court finds that the Department behaved reasonably and within its discretion in carrying out its responsibility to exercise prudent judgment as to whether and under what conditions to grant any license to Fresh Start. Moreover, procedural due process is a flexible concept, fundamentally requiring "the opportunity to be heard 'at a meaningful time and in a meaningful manner.' " *Mathews,* 424 U.S. at 333, 96 S.Ct. 893 (citing *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965)). Fresh Start received ample opportunity to be heard prior to the Department's May, 2005 denial of Fresh Start's request for a declaratory ruling. Accordingly, summary judgment as to the due process claims is granted.

### 2. Equal Protection

■ Fresh Start does not allege membership in any protected class; therefore its complaint states a "class of one" equal protection claim that alleges that Galvin intentionally treated Fresh Start differently from others similarly situated, without any rational basis for the differences in treatment. *See Village of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (per curiam); *Neilson v. D'Angelis,* 409 F.3d 100, 104 (2d Cir.2005) (overruled on other grounds). However, Fresh Start has presented no evidence that any other applicants were similarly situated-for example, that any other applicant clinics were planning to

---

6. Conn. Gen.Stat. § 4–176(e) provides that "Within sixty days after receipt of a petition for a declaratory ruling, an agency in writing shall: (1) Issue a ruling declaring the validity of a regulation or the applicability of the provision of the general statutes, the regulation, or the final decision in question to the specified circumstances, (2) order the matter set for specified proceedings, (3) agree to issue a declaratory ruling by a specified date, (4) decide not to issue a declaratory ruling and initiate regulation-making proceedings, under section 4–168, on the subject, or (5) decide not to issue a declaratory ruling, stating the reasons for its action."

rely on staff members who had already committed serious violations relating to their operation of the facility in question, or that any other applicants had failed to submit written policies and procedures or failed to allow the Department to conduct a physical inspection of the facility when asked to do so. *Olech* requires an extremely high level of similarity between a plaintiff and the alleged comparators. A plaintiff pursuing a "class of one" claim must demonstrate that it was treated differently from someone "prima facie identical in all relevant respects." *Neilson,* 409 F.3d at 105–06. Fresh Start has not met this burden.

■ Furthermore, the Department had a rational basis for its treatment of the Fresh Start application, in that Fresh Start employees had behaved improperly in their operation of the clinic and individually had entered into consent orders as a result of their conduct, Fresh Start itself had been the subject of at least one complaint resulting in the Department's investigation, and Fresh Start failed to submit adequate written policies and procedures in a timely fashion. There is no evidence that Galvin or the other employees of the Department acted with discriminatory intent. Accordingly, summary judgment is granted as to the equal protection claim.

## C. Questions Regarding Galvin's Involvement In the Alleged Conduct

■ Section 1983 imposes liability for conduct which "subjects, or causes to be subjected" a complainant to a deprivation of a right secured by the Constitution and laws of the United States; accordingly, "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Williams v. Smith,* 781 F.2d 319, 323 (2d Cir.1986) (internal quotations and citations omitted). Since personal involve-

ment is a question of fact, the general rule that summary judgment may be granted only if no issues of material fact exist and the defendant is entitled to judgment as a matter of law applies. *Id.* The party seeking summary judgment bears the burden of establishing that no such dispute exists, and all ambiguities must be resolved and all inferences drawn in favor of the party against whom judgment is sought.

Fresh Start alleges a number of intentional, allegedly unconstitutional actions by representatives of the Department during its processing of the Fresh Start license application. However, none of the actions or conduct in question was taken by Galvin, nor do the plaintiff's pleadings or supporting exhibits assert personal involvement by Galvin in directing or dictating the decisions or procedures followed by the Department employees. The complaint, though referring to "the defendant," alleges violations of state and federal law by the Department or by the employees who handled the Fresh Start application, not by Galvin. The complaint also fails to name those individuals as defendants. The memorandum in opposition to the motion for summary judgment does not address Galvin's lack of involvement, but merely continues to state claims against the Department as an entity, despite the fact that the complaint brings no claims against the Department itself. The only alleged involvement of Galvin in the Fresh Start application is Galvin's designation of a Department employee to rule on Fresh Start's petition for a declaratory ruling, and his alleged meeting with that employee in order to make the designation. *See* Plaintiff's Local Rule 56 Statement of Material Facts, ¶¶ 74–76. Under the liberal standard that applies at the summary judgment stage, the Court finds that issues of fact exist as to Galvin's involvement in the Fresh Start ap-

plication process. *Williams,* 781 F.2d at 323–24 (describing several ways in which a defendant may be personally involved in a constitutional deprivation under 42 U.S.C. § 1983). However, in light of the Court's consideration of the merits of the plaintiff's allegations, the true extent of Galvin's alleged personal involvement would not change the outcome of this ruling.

### D. Qualified Immunity Bars Suit Against Galvin in His Individual Capacity

As Galvin has not been named in his individual capacity, the plaintiff has no basis, on the face of the complaint as currently drafted, for any claim to monetary damages that would be paid by Galvin himself rather than by the state. However, since the defendant's motion for summary judgment addresses the defense of qualified immunity, which applies to claims against officials in their individual capacities, the Court notes that even if a claim against the defendant in his individual capacity had been stated in the complaint, such a claim would be precluded by the qualified immunity defense.[7]

Analysis of a qualified immunity claim involves a three-step inquiry. *Harhay v. Town of Ellington Bd. Of Educ.,* 323 F.3d 206, 211–12 (2d Cir.2003). First, the plaintiff must allege a violation of a constitutional right. Second, the violated right must have been clearly established at the time of the conduct. Finally, the plaintiff must demonstrate that the defendant's actions were not objectively reasonable. *Id.*

(internal citations omitted). As discussed above, plaintiff's allegations concerning violations of its constitutional rights fail on the merits. Moreover, the plaintiff has not demonstrated that the actions of either Galvin or the Department were unreasonable given the known information about violations occurring at the Fresh Start facility during the pendency of its application. Accordingly, even if the Court were to construe the suit as one against Galvin in his individual capacity, qualified immunity would apply as a defense.

### IV. Conclusion

For the foregoing reasons, the motion for summary judgment [Dkt. # 23] is GRANTED. The Clerk is ordered to close the case.

---

7. When dismissing a case on Eleventh Amendment grounds, a court should not dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Oliver Schools, Inc. v. Foley,* 930 F.2d 248, 252 (2d Cir.1991) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In some cases it is appropriate to grant a plaintiff leave to amend a complaint naming a defendant in his official capacity only so that it will state a claim. *Id.* (citing *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); Fed.R.Civ.P. 15). The Court therefore construes this complaint liberally for the purposes of addressing the motion for summary judgment.