**CENTURY 21 REAL ESTATE CORPORATION, a California Corporation, Century 21 Real Estate of Arizona, Inc., an Arizona Corporation, Southern Nevada Franchise Service Co., Inc., a Nevada Corporation, and Robert E. Barrett, and Barrett & Co., Inc. Realtors, a Nevada Corporation, Plaintiffs,**

**v.**

**The NEVADA REAL ESTATE ADVISORY COMMISSION, Robert W. Hass, Elizabeth M. Krolak, Fred M. Schultz, Olivia D. Silvagni and Carl F. Fuetsch, members thereof and Angus W. McLeod, Administrator of the Nevada Real Estate Division, Defendants.**

Civ. No. R–76–136 BRT.

United States District Court,
D. Nevada.

April 12, 1978.

---

Samuel W. Belford II and J. Stephen Peek of Hale, Belford, Lane & Peek, Reno, Nev., John P. Moravek, Irvine, Cal., for plaintiffs.

Lewis & Roca, Phoenix, Ariz., for third party plaintiff Red Carpet Corp. of America.

Robert List, Atty. Gen. for Nevada, Carson City, Nev., for defendants.

Before MERRILL, Circuit Judge, and FOLEY and THOMPSON, District Judges.

## OPINION

THOMPSON, District Judge:

A three-judge court has been convened to determine the validity of a regulation of

the Nevada Real Estate Advisory Commission requiring franchised brokers to display their names as prominently as their franchisors' in all advertisements. We sustain the regulation against the plaintiffs' constitutional attack. This holding rests on negative answers to the following principal questions: (1) Whether the imposition of a 50:50 advertising ratio violates the First Amendment; (2) Whether it creates a conclusive presumption that any other ratio is misleading in derogation of the due process and equal protection clauses of the Fourteenth Amendment; (3) Whether it impermissibly dilutes a service mark protected by the Lanham Act; and (4) Whether it places an undue burden on interstate commerce.

Century 21 Real Estate Corporation, a plaintiff in this action, is a nationally recognized franchisor of real estate brokerage firms. Its subsidiaries, plaintiffs Century 21 Real Estate of Arizona, Inc. and Southern Nevada Franchise Service Co., enjoy the right to market the Century 21 franchise package in the State of Nevada. Plaintiff Robert Barrett is a Nevada realtor and a franchisee of Century 21.

Over the past decade, Century 21 has staged a nationwide campaign to promote its service mark, a modern building logo bordered on top with the words "Century 21." This service mark occupies 80% of the surface area of any given display. The remaining 20% is reserved, in the general promotional materials, for filler messages such as "real estate" or for the insertion of the franchisee's name, like "ABC Realty." This ratio runs afoul of that mandated by section VII of the Rules and Regulations of the Nevada Real Estate Advisory Commission, which reads as follows:

"(4) Any broker who operates under or uses a franchise name shall:

\* \* \* \* \* \*

(b) incorporate in the franchise name and logotype his own name; however, the broker's name may not be less than 50 percent of the surface area of the entire combined area of both the broker's name and the trade name or logotype. . ."

The plaintiffs ask that this regulation be declared invalid and that an injunction enter in their favor against its enforcement.

### (1) The First Amendment.

The plaintiffs premise their First Amendment claim on the general proposition that commercial speech merits constitutional protection. *Virginia State Bd. of Pharmacy v. Citizens Cons. Council, Inc.*, 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976). Equating commercial speech with other types of protected speech, the plaintiffs reason that only a "significant" or "compelling" state interest will justify its regulation and that, even then, the regulation must be the "least restrictive" of the alternatives the state might adopt in accomplishing its end. Cf. *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 217–18, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975). It is conceded that the state's interest in keeping false or misleading advertising from consumers is substantial. *Bates v. State Bar of Arizona*, 433 U.S. 350, 362, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977); *Linmark Associates, Inc. v. Township of Willingboro*, 431 U.S. 85, 93–4, 97 S.Ct. 1614, 52 L.Ed.2d 155 (1977). The vice in the regulation under attack here, it is argued, is that it sweeps too broadly, proscribing advertisements that might, after a hearing on the merits, prove neither false nor misleading.

■ To date the Supreme Court has, in a First Amendment context, dealt only with challenges to laws that work a "blanket," "total" or "complete" suppression of commercial speech. *Bates v. State Bar of Arizona*, 433 U.S. at 383, 97 S.Ct. 2691; *Carey v. Population Serv. Int'l*, 431 U.S. 678, 702, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977); *Virginia State Bd. of Pharmacy v. Citizens Cons. Council, Inc.*, 425 U.S. at 772 n. 24, 96 S.Ct. 1817. See *Linmark Associates, Inc. v. Township of Willingboro*, 431 U.S. at 92, 97 S.Ct. 1614. The regulation at issue here, by contrast, does not suppress any speech; it merely requires that the franchisee's independent status be proclaimed in tones as loud as those used to advertise the franchisor-franchisee relationship. Nothing in

the regulation prevents Century 21 from preserving the visual impact of its 80:20 format by using filler messages, as it in fact does in its general advertisements, to take up the space ordinarily used to display the franchisee's name. The regulation simply requires Century 21 to go further and give as much space to the franchisee as it gives its own logotype. With this and other possible accommodations in mind, we doubt that the regulation at issue here abridges any First Amendment freedoms. *See Banzhaf v. FCC*, 132 U.S.App.D.C. 14, 33–35, 405 F.2d 1082, 1101–03 (1968), *cert. denied sub nom. Tobacco Inst., Inc. v. FCC*, 396 U.S. 842, 90 S.Ct. 50, 24 L.Ed.2d 93 (1969), quoted with approval in *Virginia State Bd. of Pharmacy v. Citizens Cons. Council, Inc.*, 425 U.S. at 772 n. 24, 96 S.Ct. 1817.

In traditional doctrinal terms, the only First Amendment argument against this regulation is that it may have a "chilling effect" on franchisors, making them reluctant to go to the trouble and expense of designing special lay-outs which will comply with the 50:50 rule. Perhaps more important than the advertiser's right to express himself, however, is the consumers' right to receive information. See *Virginia State Bd. of Pharmacy v. Citizens Cons. Council*, 425 U.S. at 756–57, 96 S.Ct. 1817 (consumer standing to challenge prohibition on prescription price advertising). Because of its greater durability, commercial speech deserves less latitude than other kinds:

"Since advertising is the *sine qua non* of commercial profits, there is little likelihood of its being chilled by proper regulation and foregone entirely.

"Attributes such as . . . the greater objectivity and hardiness of commercial speech, may make it . . . appropriate to require that a commercial message appear in such a form, or include such additional information, warnings and disclaimers, as are necessary to prevent its being deceptive. They may also make inapplicable the prohibition against prior restraints."

*Id.* at 772 n. 24, 96 S.Ct. at 1830 (citations omitted). Indeed, the plaintiffs here do not allege that the regulation makes it infeasible to advertise in Nevada; they complain only that it makes it more expensive. We cannot agree that a least restrictive alternative applies to regulations which are designed to combat misleading or deceptive practices and which in no way threaten the commercial message with complete or total suppression.[1] Judged by a reasonableness standard, the 50:50 rule constitutes a legitimate means to the legitimate and important end of ensuring that the public realizes it is doing business with an independent broker and not a national firm when it buys or sells real estate in Nevada.

*(2) Conclusive Presumption.*

Citing *Cleveland Board of Education v. La Fleur*, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974) and *Vlandis v. Kline*, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973), the plaintiffs find additional fault with the regulation in that it creates a conclusive presumption that advertisements employing anything other than a 50:50 ratio are misleading. Although its contours remain un-

---

1. "But the justification for the application of overbreadth analysis applies weakly, if at all, in the ordinary commercial context. As was acknowledged in *Virginia Pharmacy Board v. Virginia Consumer Council*, 425 U.S., at 771 n. 24, [96 S.Ct. 1817 at 1830], there are 'common-sense differences' between commercial speech and other varieties. See also id., at 775–781, [96 S.Ct. 1817 at 1832–1835] (concurring opinion). Since advertising is linked to commercial well-being, it seems unlikely that such speech is particularly susceptible to being crushed by overbroad regulation. See id., at 722–723, n. 24, [96 S.Ct. 1817, at 1830–1831]. Moreover, concerns for uncertainty in determining the scope of protection are reduced; the advertiser

seeks to disseminate information about a product or service that he provides, and presumably he can determine more readily than others whether his speech is truthful and protected. Ibid. Since overbreadth has been described by this Court as 'strong medicine,' which 'has been employed . . . sparingly and only as a last resort,' *Broadrick v. Oklahoma*, 413 U.S. [601], at 613, [93 S.Ct. 2908, at 2916, 37 L.Ed.2d 830], we decline to apply it to professional advertising, a context where it is not necessary to further its intended objective. Cf. *Bigelow v. Virginia*, 421 U.S. [809], at 817–818, [95 S.Ct. 2222, at 2230, 44 L.Ed.2d 600]." *Bates v. State Bar of Arizona*, 433 U.S. at 380–81, 97 S.Ct. at 2707.

certain, the conclusive presumption doctrine has been curtailed in recent decisions. *See Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). *See, also, Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976); Note, The Burger Court's "Newest" Equal Protection: Irrebuttable Presumption Doctrine Rejected, 1977 Wash.U.L.Q. 140 (1977). To the extent that it has been assimilated to a "fundamental rights" analysis, cf. *Weinberger v. Salfi*, 422 U.S. at 771–73, 95 S.Ct. 2457, it seems doubtful that the conclusive presumption doctrine adds anything to the precepts of the First Amendment. We have concluded, *supra*, that the First Amendment tolerates the regulation at issue here. Having lost the first round, the plaintiffs cannot resort to the Due Process and Equal Protection clauses to parlay into constitutional principle the claim that their First Amendment freedoms require the State to pursue the least restrictive alternative open to it and hold a hearing in every case.

(3) *The Lanham Act.*

The Lanham Act establishes a nationwide system for the registration of trademarks used in interstate commerce. 15 U.S.C. §§ 1051 et seq. The modern building logo, with the words "Century 21" arranged around it, is protected by the Act. A patent is pending on the use of the Century 21 service mark in the customary 80:20 ratio. The 50:50 rule threatens to dilute the mark, it is argued, and could lead to a finding that it has been abandoned. The plaintiffs thus voice the additional objection that the Nevada Real Estate Advisory Commission regulation violates the Supremacy Clause of the Constitution.

In recent times, the Supremacy Clause has seldom been used to strike down state law:

"[F]ederal regulation of a field of commerce should not be deemed preemptive of state regulatory power in the absence of persuasive reasons—either that the nature of the regulated subject matter permits no other conclusion or that the Congress has unmistakably so ordained."

*Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963). *See DeCanas v. Bica*, 424 U.S. 351, 96 S.Ct. 933, 47 L.Ed.2d 43 (1976). The Lanham Act contains no manifestation of a Congressional intent comprehensively to control all aspects of the trademark field. *Mariniello v. Shell Oil Co.*, 511 F.2d 853, 857 (3rd Cir. 1975). Nor are we convinced that the state regulation at issue here collides with any of its policies or provisions.

The Senate Report accompanying the Lanham Act reveals that its purpose was two-fold: first, to ensure that the public gets what it thinks it is getting when it buys a name brand; and second, to protect trademark holders from pirates and cheats. *See* S.Rep.No. 1333, 79th Cong., 2d Sess. (1946). To the extent the state regulation is aimed at preventing deception, it comports with the first of these policies, Cf. 15 U.S.C. § 1055, and the regulation does not in any manner dilute the Lanham Act's protection of registered trademarks against unlawful use by others. Relying on *Mariniello v. Shell Oil Co., supra,* we sustain the rule against the plaintiffs' Supremacy Clause challenge. *See also: Wiener King, Inc. v. Winer King Corp.*, 407 F.Supp. 1274 (D.N.J.1976).

(4) *Interference With Interstate Commerce.*

In their moving papers the plaintiffs press the final argument that the regulation results in an impermissible interference with interstate commerce. At the outset, we note our difficulty in perceiving what, if any, burden the regulation actually imposes on interstate commerce since it is directed principally at the local level, affecting only intrastate advertisements. Cf. *Head v. New Mexico Bd. of Examiners in Optometry*, 374 U.S. 424, 447, 83 S.Ct. 1759, 10 L.Ed.2d 983 (1963) (Brennan, J. concurring); *TV Pix, Inc. v. Taylor*, 304 F.Supp. 459, 463 (D.Nev.1968), aff'd 396 U.S. 556, 90 S.Ct. 749, 24 L.Ed.2d 746 (1970). It is true that Century 21 prepares placards, advertisements and television commercials for na-

tionwide distribution and that the Century 21 mark derives federal protection from the Lanham Act. But the Nevada regulation does not impede the interstate transportation of goods through particular states, *see Bibb v. Navajo Freight Lines, Inc.*, 359 U.S. 520, 79 S.Ct. 962, 3 L.Ed.2d 1003 (1959), nor does it discriminate against interstate commerce, requiring the national franchisors to forebear advertising in Nevada or otherwise lose the advantages that inure to a franchised broker, *see Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 351, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). Combatting fraudulent or deceptive advertising in the real estate brokerage business is a matter of extensive state regulation, *see* ch. 645 of NRS, and peculiarly local concern. *See*, e. g., *Riley v. Chambers*, 181 Cal. 589, 185 P. 855 (1919). The regulation is appropriately aimed at providing consumers with more, not less, information. *See Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. at 353, 97 S.Ct. 2434. Whatever incidental burden on interstate commerce may exist, we conclude that it is slight in comparison with the weighty state interest Nevada has in ensuring that its citizens realize that they must look to the local broker and not the franchisor for recompense in the event they are defrauded in a real estate transaction.

This balancing test to judge the validity of state laws and regulations vis-a-vis the commerce clause was recently reaffirmed in *Raymond Motor Trans., Inc. v. Rice*, —— U.S. ——, ——, 98 S.Ct. 787, 54 L.Ed.2d 664 (1978).

"In this process of 'delicate adjustment,' the Court has employed various tests to express the distinction between permissible and impermissible impact upon interstate commerce, but experience teaches that no single conceptual approach identifies all of the factors that may bear on a particular case. Our recent decisions make clear that the inquiry necessarily involves a sensitive consideration of the weight and nature of the state regulatory concern in light of the extent of the burden imposed on the course of interstate commerce." . . .

In consideration of the premises,

*IT HEREBY IS ORDERED* that plaintiffs' motion for summary judgment be, and it hereby is, denied.

*IT IS FURTHER ORDERED* that defendants' motion for summary judgment be, and it hereby is, granted.

I certify that all members of the Court have concurred in the foregoing opinion and orders.