LISA'S PARTY CITY, INC., doing business as Party City, and Gary R. Blum, Plaintiffs–Appellants,

v.

TOWN OF HENRIETTA, Town of Henrietta Zoning Board of Appeals, Roger Gates, Andrew Malcolm, Jody Pulsifer, Robert Steidle, Valeri Schillinger, Patricia Larocca, Florian Sobolewski and A. David Pirrello, Defendants–Appellees.

Docket No. 98–7695.

United States Court of Appeals, Second Circuit.

Argued: Feb. 22, 1999.

Decided: July 20, 1999.

Glenn E. Pezzulo, Culley, Marks, Tanenbaum, Capell & Pezzulo, Rochester, NY, for Plaintiffs–Appellants.

Thomas A. Lenweaver, Trevett, Lenweaver & Salzer, P.C., Rochester, NY, for Defendants–Appellees.

Before: LEVAL, POOLER, and HEANEY,\* Circuit Judges.

HEANEY, Senior Circuit Judge:

Lisa's Party City, Inc., doing business as Party City, and its president, Gary Blum (collectively "Party City"), appeal from an adverse grant of summary judgment in an action alleging violation of the Lanham Act, 15 U.S.C. § 1121(b), and civil rights violations under 42 U.S.C. § 1983, arising out of a decision by the Town of Henrietta ("the Town") denying Party City's request for a sign permit variance. Party City contends that a provision of the Henrietta Town Code requiring uniformity in sign color compels the alteration of its trademark in violation of § 1121(b) of the Lanham Act by prohibiting the use of its multicolor trademark on an exterior sign in a red-only shopping center. Additionally, Party City claims that because other businesses located within the same shopping plaza display multicolor signs, the Town's refusal to grant a variance rises to a violation of equal protection and substantive due process. We reject these arguments and affirm the judgment of the district court.

### Background

Party City, a franchisee of Party City, Inc., sells paper products and party supplies from a retail space in the Jay Scutti Plaza, located in Henrietta, New York. During the summer of 1995, after it entered into a lease agreement for its current space, Party City submitted a written application and received a permit for a sign in all red letters. This application comported with the Henrietta Town Code ("the sign ordinance"), which provides, in relevant part, that "[i]n shopping plazas, each individual store or other enterprise shall be permitted to have one (1) wall or roof sign ... [t]he design and style of [which] shall be coordinated so as to create aesthetic uniformity within the plaza." Henrietta Town Code, § 97–8–B(2). In compliance with this uniformity requirement, the owner of the Jay Scutti Plaza had selected the color red for all signs in its plaza.

On or about September 28, 1995, Party City applied for a variance granting it permission to erect a sign with five alternating colors in conformity with its feder-

---

\* The Honorable Gerald W. Heaney, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

ally-registered trademark. After Party City received a written denial of its variance request, it commenced an Article 78 proceeding under the Civil Practice Law and Rules of the State of New York appealing the decision of the Zoning Board. On March 27, 1996, Party City withdrew its Article 78 petition and subsequently commenced the instant suit. The district court found that the Town had neither required appellant Party City to alter its trademark in violation of the Lanham Act, 15 U.S.C. § 1121(b), nor violated appellants' civil rights, and accordingly entered summary judgment for the Town, dismissing appellants' cause of action.[1]

### Discussion

Summary judgment is appropriate if the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 36 (2d Cir.1994). We review the grant of a motion for summary judgment *de novo. See Fund For Animals v. Babbitt,* 89 F.3d 128, 132 (2d Cir. 1996).

1. *The sign ordinance does not require "alteration" of a registered trademark within the meaning of the Lanham Act.*

■ Appellants contend that the Town's actions require alteration of a federally-registered trademark in violation of the Lanham Act. Section 1121(b) of the Lanham Act provides, in relevant part, that "[n]o State . . . or any political subdivision . . . thereof . . . may require alteration of a registered mark." 15 U.S.C. § 1121(b).

Section 1121(b) was added to the Lanham Act in 1982 to remedy a problem that arose from the efforts of states to dictate aspects of the appearance of trademarks.

*See* H.R.Rep. No. 97–778, at 1 (1982), *reprinted in* 1982 U.S.C.C.A.N. 2621, 2621. In the best-known case giving rise to the enactment of § 1121(b), Century 21, a national real estate corporation, brought suit under the Lanham Act to challenge a Nevada regulation requiring realtors to designate at least 50% of the surface area of their signs for display by local franchisers. Century 21's registered trademark designated 80% of the sign's surface area for display of its corporate logo and the remaining 20% for display of the local franchisee's name. The district court ruled that the Nevada regulation did not violate the Lanham Act, and the Supreme Court affirmed. *See Century 21 Real Estate Corp. v. Nevada Real Estate Advisory Comm'n,* 448 F.Supp. 1237, 1241 (D.Nev. 1978), *aff'd,* 440 U.S. 941, 99 S.Ct. 1415, 59 L.Ed.2d 630 (1979). In the aftermath of the *Century 21* decision, other states adopted rules similar to Nevada's requiring designation of differing percentages for the use of local franchisees. *See* H.R.Rep. No. 97–778, at 1 (1982), *reprinted in* 1982 U.S.C.C.A.N. 2621, 2621. These rules resulted in confusion and ultimately in the "technical" change implemented by § 1121(b). *Id.* at 2, *reprinted in* 1982 U.S.C.C.A.N. at 2622.

Appellants first argue that the term "alteration" is so unambiguous as to admit of no other construction than one which prohibits application of city zoning regulations in a manner that inhibits the use of a federally-registered trademark. We disagree.

■ In resolving the meaning of statutory text, we are mindful that a central axiom of statutory construction holds that " 'the starting point in every case involving construction of a statute is the language itself.' " *Kelly v. Robinson,* 479 U.S. 36, 43, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986) (quoting *Blue Chip Stamps v. Manor*

---

**1.** The Town brought a motion to dismiss, but as both parties had submitted materials beyond the pleadings the court considered the additional evidence and accordingly treated the motion as one for summary judgment. *See Lisa's Party City, Inc. v. Town of Henrietta,* 2 F.Supp.2d 378, 380 (W.D.N.Y.1998) (citing Fed.R.Civ.P. 56).

*Drug Stores,* 421 U.S. 723, 756, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975) (Powell, J., concurring)). However, "[w]here the scope of a statutory provision is not made crystal clear by the language of the provision, it is appropriate to turn to the legislative history of the statute." *In re Palm Coast, Matanza Shores L.P. v. Bloom,* 101 F.3d 253, 257 (2d Cir.1996) (quoting *Berger v. Heckler,* 771 F.2d 1556, 1571 (2d Cir. 1985)). The statutory language of § 1121(b) bars state or local regulations from requiring "alteration" of a federally-registered trademark. What this means is not self-evident. Appellants urge a reading of the statute that broadly prohibits a state or local government from restricting or interfering with the display or reproduction of a trademark in any manner that alters its appearance as exhibited in the Certificate of Registration issued by the U.S. Patent and Trademark Office. It is far from clear that the statute sweeps so broadly. It is at least as consistent with the language of the statute to understand it as allowing a local government to restrict businesses in a narrowly circumscribed location from using exterior signs in any color other than red. Such regulation does not compel a businesses to alter their trademark, since they remain free to use their trademarks without alteration in every manifestation other than the exterior sign at the covered location—on letterhead, leaflets, billboards, magazines, newspapers, television and Internet advertising, point-of-sale displays inside the store, and external signs at other locations. Under this narrower construction of § 1121(b), a restriction on external signs in a narrowly circumscribed locality would not come within the statute's prohibition on requiring businesses to alter their trademarks.

We think the more plausible interpretation of § 1121(b) reads its use of the term "alteration" "to describe state-mandated changes in the mark itself, which are, of necessity, reflected in every subsequent display of that mark within the relevant jurisdiction." *Blockbuster Videos,*

*Inc. v. City of Tempe,* 141 F.3d 1295, 1304 (9th Cir.1998) (Browning, J., dissenting). As noted above, Congress enacted § 1121(b) of the Lanham Act because state regulations compelled trademark holders to change the character and design of their trademarks throughout an entire statewide jurisdiction. *See Lanham Trademark Act Amendment: Hearing on H.R. 5154 Before the Subcomm. on Courts, Civil Liberties, and the Admin. of Justice of the House Comm. on the Judiciary,* 97th Cong., 2d Sess. 18–21 (1982) (statement of Iris D. Reeves, Manager, Century 21 Reeves Realty, Inc.) (*"Hearings"*). By contrast, local uniform aesthetic and historic regulations simply limit color typefaces and decorative elements to certain prescribed styles. These regulations have no effect on the businesses' trademark. They limit only the choice of exterior sign at a particular location. As such, though entirely disallowing the use of a registered trademark in carefully delimited instances, these regulations do not require "alteration" at all.

Appellants next argue that even if the term "alteration" is not free from ambiguity, the statutory history does not support the district court's interpretation of § 1121(b). We disagree. The statutory history both affirms our intuition that the term "alteration" is susceptible of multiple interpretations and makes it clear that the amendment was not intended to preclude the type of ordinance at issue in this case. As Chief Judge Larimer of the Western District of New York noted in a similar case, "[t]he legislative history of § 1121(b) is unequivocal that aesthetic zoning does not constitute an 'alteration' of a registered mark within the meaning of the statute. The section simply was not intended 'to interfere with local aesthetic or hist[o]ric-type zoning,' but was aimed only at prohibiting the actual alteration of the mark itself." *Payless Shoesource, Inc. v. Town of Penfield,* 934 F.Supp. 540, 543 (W.D.N.Y.1996) (quoting *Hearings,* at 10 (statement of Rep. Barney Frank)). This understanding was memorialized in the

House Report for H.R. 5154, the bill that became § 1121(b), which states: "During the course of Committee debate Mr. Frank raised the issue of whether the bill would in any way restrict the zoning or historic site protection laws or regulations of states. On the advice of counsel, the Committee concludes that the bill in no way affects the powers of state and local governments in areas of concern raised by the gentleman from Massachusetts." H.R.Rep. No. 97–778, at 2 (1982), *reprinted in* 1982 U.S.C.C.A.N. 2621, 2622. Additionally, in response to Representative Frank's stated concerns, Commissioner of Patents and Trademarks Gerald J. Mossinghoff responded that "it will be clear that [an otherwise uniform aesthetic or historic zoning regulation] would not be adversely affected by the legislation." *Hearings,* at 10 (statement of Gerald J. Mossinghoff, Commissioner of Patents and Trademarks).

We believe that appellant's reading of the statute would seriously erode local regulatory power. Appellant does not deny that, even under its reading, localities would remain free to prohibit outdoor signs altogether or to drastically limit their size. *See Blockbuster Videos, Inc.,* 141 F.3d at 1299 n. 2. But appellant's position would leave localities powerless to control the color, design elements, or character of outdoor signs. It is difficult to imagine why Congress would have wished to require localities seeking to protect aesthetic harmony to employ such broad measures as forbidding signs altogether or drastically limiting their size, rather than narrower measures such as requiring color conformity or consistent design elements. *See Payless Shoesource, Inc.,* 934 F.Supp. at 546; *Blockbuster Videos, Inc.,* 141 F.3d at 1305–06 (Browning, J., dissenting).

2. *Application of the sign ordinance did not offend equal protection or due process rights.*

Appellants also contend that the district court erred in dismissing their civil rights

claim under 42 U.S.C. § 1983. The claim alleges that the Town deprived Party City of its equal protection and due process rights when it permitted other retailers to erect the same type of multicolor sign Party City sought to display. Specifically, Party City argues that the sign displayed by the Toys R Us store at Jay Scutti Plaza-a sign comprised of large, multicolor block letters-is similar to Party City's sign which the Town rejected. Additionally, Party City claims that plaza tenant stores including the Associates, Discovery Zone, and Pizzeria Uno were all permitted to erect signs that incorporate multicolor designs.

a. *Equal Protection*

 The Equal Protection Clause of the Fourteenth Amendment directs that "all persons similarly situated ... be treated alike." *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (citing *Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982)). In order to establish a violation of equal protection based on selective enforcement, the plaintiff must ordinarily show " '(1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.' " *LaTrieste Restaurant & Cabaret Inc. v. Village of Port Chester,* 40 F.3d 587, 590 (2d Cir. 1994) (quoting *LeClair v. Saunders,* 627 F.2d 606, 609–10 (2d Cir.1980)).

 In our view, Party City failed to show an issue of material fact requiring trial of its equal protection claims. The evidence showed that in general, after the adoption of the ordinance, new entrants in the Jay Scutti Plaza used predominately red signs. These included Kids R Us, which normally displays its trademark multicolor block-letter sign, but here conformed to the ordinance. *See Lisa's Party*

*City, Inc. v. Town of Henrietta,* 2 F.Supp.2d 378, 383 n. 3 (W.D.N.Y.1998). In the case of one sign that did not conform and was erected without permission (Associates), the Town showed it was merely awaiting the result of this litigation to require abatement. *See id.* at 382 n. 2.

Party City showed one instance of apparent failure to enforce the ordinance. Toys R Us uses a multicolor sign within the Jay Scutti Plaza similar to the sign proposed by Party City. The permit for this sign was granted in 1987, well before the completion of the surrounding plaza in 1990 and before the current ordinance became effective on May 15, 1991. Under the terms of the ordinance, Toys R Us could retain its non-conforming sign for three years. Upon the expiration of the three years, it appears that the Town did not enforce the termination of this limited grandfathering provision.

Whether or not the Toys R Us instance alone creates a material issue of fact as to selective treatment of those similarly situated, Party City has failed to show a material issue of fact as to the key issue in an equal protection claim alleging selective enforcement—impermissible motive. Party City's evidence of impermissible motive was very weak, consisting entirely of evidence that one town official, who was not a member of the zoning board that denied the variance, was annoyed by Party City's owners. The proposition that this annoyance explained the denial of a permit is belied by the Town's showing that in all cases except the failure to require Toys R Us to conform after three years (which is barely, if at all, a similar situation), the requirements of the ordinance have been observed where applicable. On these facts, the appellant's assertion that the Town enforced the ordinance against it with an impermissible motivation is sheer "conjecture and speculation" that is insufficient to withstand the Town's motion for summary judgment. *Kerzer v. Kingly Mfg.,* 156 F.3d 396, 400 (2d Cir.1998).

#### b. *Substantive Due Process*

■ Party City also contends that the district court erred in dismissing the substantive due process prong of its civil rights claim. "In assessing a substantive due process claim in the context of land use regulation, this Court is always 'mindful of the general proscription that federal courts should not become zoning boards of appeal to review nonconstitutional land[-]use determinations by the [C]ircuit's many local legislative and administrative agencies.'" *Crowley v. Courville,* 76 F.3d 47, 52 (2d Cir.1996) (quoting *Zahra v. Town of Southold,* 48 F.3d 674, 679–80 (2d Cir.1995)). To state a substantive due process claim for wrongful denial of a permit, Party City was required to first establish that it had a valid "property interest" in a benefit that was entitled to constitutional protection at the time it was deprived of that benefit. *See Zahra,* 48 F.3d at 680. It then had to show that the Town's action in depriving it of that interest was "so outrageously arbitrary as to be a gross abuse of governmental authority." *Natale v. Town of Ridgefield,* 170 F.3d 258, 263 (2d Cir.1999).

■ The district court found that the Town had a legitimate reason for its decision to deprive Party City of its interest in erecting a sign that was fully consistent with its federally-registered trademark. We agree with the district court's determination. The Town's ordinance properly takes into account aesthetic concerns in limiting the range of colors available for exterior signs. Thus, the Town acted in accordance with a legitimate concern and cannot be said to have acted in an outrageously arbitrary manner so as to violate Party City's substantive due process rights. Accordingly, the court correctly dismissed Party City's § 1983 claim in its entirety.

#### *Conclusion*

We conclude that the Town's sign ordinance does not require alteration of a federally-registered trademark in violation of

the Lanham Act. We also conclude that the Town's application of its ordinance did not violate Party City's right to equal protection and substantive due process. Accordingly, the judgment of the district court is affirmed.